In re BITUMINOUS COAL OPER-
ATORS' ASSOCIATION, INC.

No. 91-5276.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 15, 1991.

Decided Dec. 10, 1991.

Peter Buscemi, with whom Robert A. Dufek, Stanley F. Lechner, and Alissa D. Aaronson, Washington, D.C., were on the petition for writ of mandamus.

Robert M. Weinberg, with whom Andrew D. Roth and David W. Allen, Washington, D.C., were on the response to petition for writ of mandamus, for respondent, United Mine Workers of America Health and Retirement Funds. Jeffrey Freund, Washington, D.C., also entered an appearance for respondent.

Earl V. Brown, Jr., Washington, D.C., of the bar of the Supreme Court of the U.S., pro hac vice, by special leave of the Court, for respondent, United Mine Workers of America Union. John R. Mooney, Washington, D.C., also entered an appearance for respondent.

Before RUTH B. GINSBURG, WILLIAMS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH B. GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Under the pressure of a docket crowded with criminal drug prosecutions, the district judge, over the defendant's objection, referred an apparently urgent and contentious civil controversy to a special master, virtually for all purposes. We hold that the blanket reference, which included trial

of the issues of liability, was beyond the district court's authority to order. We therefore instruct the district judge to revise the order of reference to reserve for himself, and not delegate to the special master, the core function of making dispositive rulings, including findings of fact and conclusions of law on issues of liability.

## I.

The trustees of two multiemployer trust funds, the United Mine Workers of America 1950 and 1974 Benefit Plans and Trusts (the Funds), commenced this litigation against the Bituminous Coal Operators' Association, Inc. (BCOA or Association) alleging that BCOA is obligated, under the governing collective bargaining agreement, to increase the rate at which employers contribute to the Funds. On the underlying dispute, see our prior encounter with the litigation, *UMWA 1950 Benefit Plan & Trust v. BCOA,* 898 F.2d 177 (D.C.Cir. 1990).

Complex issues of contract interpretation, accounting, and fiduciary responsibility raised by the pleadings led the district judge to conclude that disposition by summary judgment was an unlikely prospect. *See* Response of District Court to Petition for Writ of Mandamus, filed October 8, 1991, ¶ 1; Transcript of Status Call, April 23, 1991, at 5. To promote expeditious resolution of a controversy apparently made urgent by large deficits in the Funds, the district judge invited the parties to try the court's mediation program, or to consent to a reference to a special master pursuant to Rule 53 of the Federal Rules of Civil Procedure.[1]

Initially, in December 1990, both sides resisted appointment of a special master. The Funds rejected mediation in April 1991 but the next month, asked the court to revisit the question of referral to a special master. Transcript of Proceedings, May 23, 1991, at 3. BCOA expressed misgivings, particularly because it feared that its members would ultimately have to cover the cost of a special master. Transcript of Proceedings, May 30, 1991, at 2–3. The Association reported its consent, however, to a reference limited to the supervision of discovery and preparation of a draft pretrial order. *Id.* at 3–4. The district judge at that time stated: "I would like to have the case returned or restored to me fully in a form ready for trial." *Id.* at 5.

The court's "order of reference to special master" issued on July 3, 1991. The order announced "the parties' assent thereto," but reached beyond discovery supervision and pretrial order formulation to provide that

> the Special Master shall hear, consider, and make recommended findings of fact and conclusions of law for the determination of all motions and contested matters now pending and hereafter to come to issue herein, until this reference is withdrawn[.]

Order of Reference to Special Master, July 3, 1991, at 2. The court set December 31, 1991 as the date for the master's Report, "including his recommended findings of fact and conclusions of law." The order further stated that the master would be compensated for his services at his regular hourly rate, not to exceed $325 per hour; it also authorized the master's employment of an associate lawyer at an hourly rate of $130.

BCOA, on July 16, 1991, moved to amend the order of reference to conform to the parties' agreement, which had confined the special master's province to the discovery process and preparation of a pretrial order. In response, the Funds stated that they did not oppose amendment of the reference order:

> It is our understanding that the Court's intention in this matter was to limit the reference to those terms assented to by the parties. Indeed, the Court's July 3 Order of Reference expressly states that it is based, *inter alia,* on "the parties' assent thereto." Based on this

---

1. Rule 53 provides, in part:

 **(b) Reference.** A reference to a master shall be the exception and not the rule.... [I]n actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

understanding, we do not object to the BCOA's motion to amend to the extent that the BCOA seeks to limit the Special Master's duties, at least initially, to the supervision of pretrial discovery and preparation of a draft pretrial order.

Plaintiffs' Response to BCOA Motion to Amend Order of Reference to Special Master, served July 24, 1991, at 5. The Funds further observed:

> [I]f the BCOA were at the conclusion of discovery to object to an extension of the reference for fact-finding purposes, the Court could still achieve the necessary expedition of these cases through alternative means, as we will urge at the appropriate time should circumstances warrant. In brief, the Court could bifurcate for trial the issues of liability and relief *and refer the latter issue of relief to the Special Master.*

*Id.* at 6 (emphasis in original).

Without stating reasons, the district judge, in an August 12, 1991 order, denied the motion to amend. At a status conference nine days later, the judge amplified:

> It is my intention that the special master shall, for all purposes, henceforth until the order of reference is withdrawn, function as a surrogate judge in this case and to rule on matters which may be collateral, may be substantive and may be interlocutory of any description, until such time as I see fit to withdraw the reference.
>
> You are always at liberty to make a motion to have the reference withdrawn. I don't expect that I'm going to look very

favorably on it for anything other than a catastrophic change in circumstances. But for the foreseeable future, you can simply regard [the special master] as your judge.

Transcript of Status Call, August 21, 1991, at 2–3. Pointing to the congested state of his calendar, the district judge added:

> As I have been told and my colleagues have been told, we are now engaged in a war on drugs. And we all have to make sacrifices. And your sacrifice, although I'm not at all sure that it represents a sacrifice at all, is to present your case to [the special master] and not to me.

*Id.* at 3–4.[2] The district court cited no authority, and we have found none, reading Rule 53 to permit judges to refer, over a party's objection, cases in their entirety to masters.

The district judge let the record reflect that BCOA had withdrawn its consent, but stated that "the order of reference [otherwise] stands." *Id.* at 12. The only other way the court proposed for the Association to address the matter was by petition for a writ of mandamus. *Id.* at 10.[3] BCOA has so petitioned this court.

## II.

■■■ Mandamus is an extraordinary remedy "reserved for really extraordinary cases." *Ex parte Fahey*, 332 U.S. 258, 260, 67 S.Ct. 1558, 1559, 91 L.Ed. 2041 (1947). While recognizing that this litigation qualifies as "really extraordinary," we open no door for "indiscriminate use" of the remedy to avoid the strictures of the final judgment rule. *See La Buy v. Howes Leather*

---

2. Although firmly refusing to limit the all-purpose reference, the district judge did suggest that BCOA

> make an effort to work with the special master to get the case ready for trial and see how that goes, rather than chafing at . . . the scope of the appointment from the outset. Then if at some later time down the road, [BCOA] feel[s] [it] ha[s] good cause to ask that the order of reference be withdrawn, I will certainly entertain that motion.

*Id.* at 11. The district judge more recently stated that the order of reference remains subject to his "review and recall" and that he "has *not* finally determined to defer withdrawal of the reference to the Special Master until after a full trial on the merits." Response of District Court to Petition for Writ of Mandamus, filed October

8, 1991, ¶¶ 6, 7 (emphasis in original). *But see* Transcript of Status Call, August 21, 1991, at 3 (judge indicates that he did not expect to look favorably on a motion to withdraw or, in the foreseeable future, to alter the reference).

3. The district judge said, precisely:

> Now, there are two ways that [BCOA] can address this. [The Association] can file a motion to withdraw. I've already denied [the] motion to amend. [BCOA] can file a motion for leave to withdraw or, alternatively, [BCOA] can go to the court of appeals and get them to issue a writ of mandamus against me.

*Id.* BCOA, as just recounted, did withdraw its consent with the district court's permission. Nevertheless, the district judge decreed that "the order of reference stands." *Id.* at 12.

*Co.*, 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957). We grant the writ not because the district judge simply "abused his discretion," but because he has no discretion to impose on parties against their will "a surrogate judge," a substitute from the private bar charged with responsibility for adjudication of the case. *See id.* at 256, 77 S.Ct. at 313 (party has a right to "trial before the court on the basic issues involved in the litigation"); *cf.* 28 U.S.C. § 636(c) (conditioning authority of U.S. magistrates to try civil cases upon consent of the parties, and stating explicitly in § 636(c)(2) that "[r]ules of court for the reference of civil matters to magistrates shall include procedures to protect the voluntariness of the parties' consent"); *In re Wickline*, 796 F.2d 1055 (8th Cir.1986) (granting mandamus when district judge referred prisoner's petition to magistrate for jury trial without consent of the parties).

 Rule 53 of the Federal Rules of Civil Procedure authorizes the appointment of special masters to *assist,* not to replace, the adjudicator, whether judge or jury, constitutionally indicated for federal court litigation. *See* U.S. Const. art. III and amend. VII; *La Buy*, 352 U.S. at 256, 77 S.Ct. at 313; Kaufman, *Special Masters in the Federal Courts: Rule 53*, 58 Colum.L.Rev. 452 (1958); *cf. Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962) (in complex cases, master

can be appointed to *assist jury*). The district court's order, as described by the judge himself at the August 21, 1991 Status Call, *see supra* pp. 1166–67, strides over the line between allowable assistance to, and impermissible substitution of, the trial judge. Because the order before us exceeds the limits of the district court's reference authority—limits impelled by the character of federal courts functioning under Article III of the Constitution—mandamus is an appropriate remedy.[4]

In his order of reference, the district judge stated that the requisite "exceptional conditions" for the appointment of a special master existed in this litigation because

> there is reason to believe there is a special urgency in bringing these cases to early final resolution which cannot be addressed by *pendente lite* relief; that extensive proceedings may be required to conclude this litigation, but the Court is presently unable to devote the necessary time and attention by reason of the press of other judicial business of similar priority; and that delay in reaching a final disposition herein may result in a failure of justice.

Order of Reference to Special Master, July 3, 1991, at 1.[5] *See* Fed.R.Civ.P. 53(b) (reference to private attorney as special master in nonjury case must always be premised on "exceptional condition"; reference to U.S. magistrate as special master may be made on consent of the parties without showing any "exceptional condition").

---

**4.** At oral argument, we inquired whether counsel for BCOA had asked the district judge to certify the reference order for immediate appeal under 28 U.S.C. § 1292(b) (applications for appeals from certain interlocutory orders). Counsel had not so requested. While certification would have been, in our view, the preferable course, the district judge allowed scant room for such a request when he suggested that if BCOA opposed his ruling, the Association could "go to the court of appeals and get them to issue a writ of mandamus against me." *See supra* note 3.

The Funds, we note, incorrectly urge that *Will v. United States*, 389 U.S. 90, 96, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967), confines mandamus in special master cases to situations of "persistent disregard" of Rule 53's limits. Although the Court in *Will* described *La Buy* as a case of "persistent disregard," *Will* itself had nothing to do with orders of reference to special masters. *Will* held mandamus unavailable to check a district court's pretrial ruling requiring the pros-

ecution to turn over certain information to a defendant in a criminal case. The Court in *Will* was particularly mindful of the severe limits Congress had placed on government appeals in criminal cases. A characterization made en passant in *Will* about a case (*La Buy*) cited with approval simply will not bear the weight the Funds would place on it.

**5.** More recently, the district judge restated:

> The state of the district court's calendar at the moment, including but not limited to the additional cases attributable to the recent increase in drug possession prosecutions, will likely impede and delay its own direct personal supervision of these cases, at least to the extent required to effect a disposition of them in time to avert the insolvency of the benefit plans, if their financial condition is truly as represented by plaintiffs.

Response of District Court to Petition for Writ of Mandamus, filed October 8, 1991, ¶ 5.

---

While BCOA urges that any unconsented-to reference would constitute an abuse of judicial power, we do not grant mandamus review and relief on that ground. We would be reluctant to invoke the heavy artillery of a prerogative writ to second guess the district court's judgment—informed by its experience in this litigation—that the assistance of a special master is required to ensure that *pretrial preparation* moves forward at a pace appropriate to the need for expeditious resolution of the matters in controversy. *See* Plaintiffs' Response to Petition for Writ of Mandamus at 7–8; *In re U.S. Dep't of Defense,* 848 F.2d 232, 236–37 (D.C.Cir.1988) (citing precedent for references of pretrial matters).

Nor do we rule off limits a further reference to the special master, at the remedy-implementation stage, if and when liability has been determined by the district judge. *See La Buy,* 352 U.S. at 259, 77 S.Ct. at 315 (noting that damages portion of the case "might be referred to a master after the court has determined the over-all liability of defendants"). In this regard, we agree with several of the statements made in *In re Armco,* 770 F.2d 103, 105 (8th Cir.1985):

We believe that the district court erred in granting the master authority to preside at trial on the merits of this case. We also believe, however, that the district court acted properly in granting the master the broad authority to supervise and conduct pretrial matters, including discovery activity, the production and arrangement of exhibits and stipulations of fact.... If the district court determines that liability rests with some or all of the parties, it may request the master to conduct evidentiary rehearings with respect to damages and alternative relief and make recommendations with respect to these matters. It may also direct the magistrate to monitor and supervise any injunctive relief granted and to make reports to it with respect to compliance with any decrees entered.

CONCLUSION

In sum, it is the function of the district judge, in a non-jury civil case, to decide dispositive issues of fact and law genuinely disputed by the parties. The judge may not impose on the parties, over the objection of at least one of them, a magistrate or master as "a surrogate judge" to try the controversy and determine liability. Because the district judge ordered a transfer to the special master of authority the judge is not free to cede, we grant the petition for a writ of mandamus. On remand, the district judge shall revise his order of reference to retain for himself full authority and responsibility to try the case, to determine liability, and to decide *de novo,* without deferring to a special master, all potentially dispositive questions of fact or law.

*It is so ordered.*