**In re TOBACCO/GOVERNMENTAL HEALTH CARE COSTS LITIGATION.**

No. MDL 1279.
Misc. No. 99–213.
Civ.A.Nos. 99–0586, 99–1534.

United States District Court, District of Columbia.

June 12, 2000.

See also 76 F.Supp.2d 5.

George Mattews Fleming, Jr., George M. Fleming & Associates, LLP, Houston, TX, Charles S. Siegel, Law Offices of Charles S. Siegel, Dallas, TX, Joel S. Perwin, Miami, FL, Patrick Allen Malone, Stein, Mitchell & Mezines, Washington, DC, John Arthur Eaves, Jr., Jackson, MS, for Plaintiffs.

Timothy M. Broas, Winston & Strawn, Washington, DC, Herbert M. Wachtell, David Gruenstein, Ben M. Germana, Maria L. Sachs, Stephen R. DiPrima, John F. Lynch, Wachtell, Lipton, Rosen & Katz, New York City, Patrick S. Davies, Covington & Burling, Washington, DC, Bruce G. Merritt, DeBevoise & Plimpton, New York City, Joseph M. McLaughlin, Simpson, Thacher & Bartlett, New York City, Robert John Cynkar, Cooper, Carvin & Rosenthal, Washington, DC, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, David M. Bernick, Kirkland & Ellis, Chicago, IL, Peter A. Woolson, Robinson, Woolson, O'Connell, LLP, Baltimore, MD, Steven Klugman, DeBevoise & Plimpton, Washington, DC, Michael Asher Schlanger, Sonnenschein, Nath & Rosenthal, Washington, DC, Thomas Mccormack, Chadbourne & Parke, New York City, Paul Sommer Ryerson, Robert Francis McDermott, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Richard L. Gray, Christine L. McDaniel, Gene E. Voights, Jeffrey S. Nelson, Shook, Hardy & Bacon, Kansas City, MO, M. Carter DeLorme, Jared R. Silverman, Winston & Strawn, Washington, DC,

Thomas J. Frederick, Winston & Strawn, Chicago, IL, for Defendants.

J. Patrick Glynn, Department of Justice Civil Division/Torts Branch, Washington, DC, for Non Party.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on the motions of the Republic of Bolivia and the Republic of Venezuela to remand their lawsuits to the state courts in which they were originally brought and on the motion of the removing defendants for leave to take limited discovery. The removing defendants asserted two jurisdictional bases for the removal of these cases to federal court: (1) that the cases arise under federal law because they implicate the "federal common law of foreign relations," and (2) that the foreign plaintiffs are diverse from the named defendants. Bolivia and Venezuela moved to remand the cases to state court on the grounds that these cases do not implicate the federal common law of foreign relations, the defendants are not diverse from plaintiffs, and removal was procedurally flawed because the defendants did not unanimously consent to removal.

Upon consideration of the motions to remand, the oppositions and replies, and the oral arguments of counsel, the Court will remand Venezuela's lawsuit to state court because there is no federal jurisdiction. Because the Court finds that there is diversity jurisdiction in Bolivia's case, the Court will grant the motion for discovery in order to allow further elucidation of the facts surrounding the lack of unanimous consent to its removal.

## I. BACKGROUND

On January 20, 1999, the Republic of Bolivia filed a lawsuit against 17 tobacco companies in the District Court of Brazoria County, Texas, 239th Judicial District. Bolivia asserted state common law claims

of "negligence, fraud, misrepresentation, concealment, and deceit." Plaintiff's Original Petition ¶ 7. Seven days later, the Republic of Venezuela filed a similar lawsuit against 18 tobacco companies in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida. Both lawsuits allege that the governments paid increased health care costs as a result of the tobacco industry's misrepresentations regarding the health impacts of tobacco. More specifically, Bolivia and Venezuela assert that the tobacco industry fraudulently concealed the dangers of smoking, resulting in massive injuries to citizens to whom the governments had a duty of care.

Bolivia's action was removed to the United States District Court for the Southern District of Texas on February 19, 1999. In their notice of removal, the removing defendants asserted that removal was proper because the federal courts had both diversity jurisdiction and federal question jurisdiction, the latter under the federal common law of foreign relations. Although those defendants affiliated with the Liggett Group Inc. ("the Liggett defendants") did not consent to the removal, the removing defendants asserted that the usual procedural requirement of unanimity among defendants should be ignored because the Liggett defendants were cooperating with the plaintiffs and therefore should be realigned as plaintiffs. Before Bolivia could file a motion to remand the case to state court, Judge Samuel B. Kent of the United States District Court for the Southern District of Texas transferred the case to this Court *sua sponte* pursuant to 28 U.S.C. § 1404(a). *See Republic of Bo-*

*livia v. Philip Morris Companies, Inc.*, 39 F.Supp.2d 1008 (S.D.Tex.1999).

Venezuela's action was removed from state court to the United States District Court for the Southern District of Florida on February 26, 1999. The removing defendants asserted nearly identical grounds for removal as had the removing defendants in Bolivia's case. Venezuela's motion for remand was fully briefed in the Southern District of Florida, but had not been ruled upon by the time the Judicial Panel on Multidistrict Litigation ("MDL Panel") transferred all of the lawsuits brought against the tobacco industry by foreign sovereigns, including Venezuela's lawsuit, to this Court on June 11, 1999.

## II. DISCUSSION

Bolivia and Venezuela move to remand to state court, asserting both that this Court has no jurisdiction and that the defendants did not unanimously consent to the notices of removal. The removing defendants have moved for limited discovery regarding the latter argument in order to provide the Court with a complete record regarding the Liggett defendants' alleged cooperation with plaintiffs. Because the Court need not reach the issue of discovery if no basis exists for federal jurisdiction, it will analyze the jurisdictional arguments first.

### A. The Federal Common Law of Foreign Relations

Once a case is removed to federal court under 28 U.S.C. § 1446, it must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).[1] "[T]he pres-

---

1. In reviewing the propriety of defendants' removal of these cases, the law of this Circuit applies. Bolivia's action was transferred to this Court by Judge Kent under 28 U.S.C. § 1404(a) for all purposes, and this Court therefore has jurisdiction over the matter. Venezuela's action was transferred for pretrial proceedings by the MDL Panel under 28 U.S.C. § 1407. In such a case, the transferee court "should apply its interpretations of fed-

eral law, not the constructions of federal law of the transferor circuit." *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir.1993); *see In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175–76 (D.C.Cir.1987). Otherwise, "[t]he conduct of multidistrict litigation, which is invariably time consuming as it is, will grind to a standstill while transferee judges read separate briefs, each based on the case law of a transferor circuit, on a single

ence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. at 392, 107 S.Ct. 2425. For that reason, the party moving to remand does not have the burden; the burden is on the removing defendants to show that federal jurisdiction exists and that the motion for remand should be denied. *See* 14C CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3739 at 424 (1998) ("It is . . . well-settled under the case law that the burden is on the party seeking to preserve the district court's removal jurisdiction, typically the defendant, not the party moving for remand to state court, typically the plaintiff, to show that the requirements for removal have been met").

The complaints filed by Venezuela and Bolivia assert no claims under federal law. They contain only state statutory and common law claims. The removing defendants nevertheless argue that Bolivia and Venezuela's complaints present a federal question on their face under the federal common law of foreign relations because the lawsuits implicate the "vital economic and sovereign interests" of Bolivia and Venezuela, because the damages requested are a large percentage of each country's Gross Domestic Product, and because many of Bolivia and Venezuela's claims would require an inquiry into their governmental decision-making. *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 543 n. 8

(5th Cir.1997). Defendants also argue that the implications for the foreign relations of the United States are substantial in these cases because a failure of this country to speak with one voice in its relations with other countries would be detrimental to its interests. *See, e.g.*, Bolivia Defendants' Opposition at 8–9; Venezuela Defendants' Opposition at 9–10.

■ The federal common law of foreign relations finds its roots in the Supreme Court's decision in *Banco Nacional de Cuba v. Sabbatino*. 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). There was no such concept recognized by the courts before 1964. In *Sabbatino*, the Court held that litigation requiring an inquiry by the courts of this country into the propriety of acts of foreign states was "uniquely federal in nature," *id.* at 424, 84 S.Ct. 923, and that the scope of the "act of state doctrine"—whether and under what circumstances the courts of one country should abstain from sitting in judgment on the acts of another sovereign done within its own territory—"must be determined according to federal law." *Id.* at 427, 84 S.Ct. 923. "[A]n issue concerned with a basic choice regarding the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law." *Id.* at 425, 84 S.Ct. 923. *See also Zschernig v. Miller*, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1967); *id.* at 443, 88 S.Ct. 664 (Stewart, J., concurring) ("the conduct of our foreign affairs is entrusted under the Constitution to the National Government, not to the probate courts of the several States").

The Second Circuit subsequently held that the exercise of federal jurisdiction was proper in a lawsuit arising out of the ownership of property in the United States by a foreign head of state. *See Republic of*

---

issue of federal law." *In re NASDAQ Market Makers Antitrust Litigation*, 929 F.Supp. 174, 177–78 (S.D.N.Y.1996) (quoting *In re Integrat-* ed Resources Real Estate Ltd. Partnerships Securities Litigation, 815 F.Supp. 620, 635–36 (S.D.N.Y.1993)).

*the Philippines v. Marcos*, 806 F.2d 344 (2nd Cir.1986). The focus of the case before the Second Circuit was limited to whether the courts in adjudicating ownership interests in property located within the borders of the United States should respect the assertion of a claim to such property by a foreign sovereign's newly installed government when the property was also claimed by the foreign sovereign's former head of state. *See id.* at 347; *see also Republic of Iraq v. First Nat'l City Bank*, 353 F.2d 47, 49–50 (2nd Cir.1965). Such inquiries, the Second Circuit suggested, are not very different from inquiries into the propriety of a foreign sovereign's internal governmental actions that had been the subject of *Sabbatino*. *See Republic of the Philippines v. Marcos*, 806 F.2d at 353.

The Fifth and Eleventh Circuits recently seem to have expanded the federal common law of foreign relations to encompass any lawsuit that would have an impact on a foreign nation's vital economic or sovereign interests. *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540 (5th Cir. 1997); *Pacheco de Perez v. AT&T*, 139 F.3d 1368 (11th Cir.1998); *see also Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315 (5th Cir.1997), *vacated on other grounds*, 145 F.3d 211 (5th Cir.1998) (en banc), *rev'd and remanded on other grounds*, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *Sequihua v. Texaco, Inc.*, 847 F.Supp. 61 (S.D.Tex.1994); *Grynberg Production Corp. v. British Gas, p.l.c.*, 817 F.Supp. 1338 (E.D.Tex.1993). It is this expansion of the doctrine on which the removing defendants rely. This Court, however, chooses not to follow the decisions of these courts, particularly where, as here, the foreign sovereign plaintiffs have affirmatively chosen state court, not federal court, and have rested their claims exclusively on state law. Such plaintiffs are entitled to be "the master of the claim" and to "avoid federal jurisdiction by [their] exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. at 392, 107 S.Ct. 2425.

In *Torres*, the Fifth Circuit held that a tort action brought in Texas state court against a private American mining company based in Peru was governed by federal common law because it "[struck] not only at vital economic interests but also at Peru's sovereign interests by seeking damages for activities and policies in which the government actively has been engaged." *Torres v. Southern Peru Copper Corp.*, 113 F.3d at 543. In particular, the court noted that the mining industry in Peru was critical to Peru's economy, contributing up to 50 percent of its Gross Domestic Product, and that the government of Peru was closely involved with the operations of the defendant company. *Id.* While not dispositive, the court found it significant that Peru protested the exercise of state court jurisdiction to the State Department and filed an *amicus* brief urging the federal court to assume jurisdiction. *Id.* at 542–43; *but see Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d at 320 (federal jurisdiction did not exist because lawsuit did not strike at Germany's "vital economic interests" even though Republic of Germany filed *amicus* brief and sent letter to State Department). The *Torres* court upheld the removal of the lawsuit to federal court and the assertion of federal jurisdiction.

In *Pacheco de Perez*, the Eleventh Circuit accepted the premise of the Fifth Circuit's decision in *Torres*, but found that the federal common law of foreign relations was not implicated in a suit against a company in the Venezuelan telecommunications industry. *Pacheco de Perez v. AT&T*, 139 F.3d at 1378. The court noted that the Venezuelan government had not taken a position on the impact of the lawsuit on its interests, suggesting that the lawsuit could not be of vital importance to the government of Venezuela. *Id.* The court also observed in *dicta* that "[t]he cases addressing this area of federal common law generally involve disputes in which a foreign government, or its instrumentality, is a named party to a lawsuit, or

where the actions of a foreign government are a direct focus of the litigation." *Id.* at 1377.

■ The defendants in these cases seize upon the language of *Torres* and *Pacheco de Perez* to justify their removal of Bolivia and Venezuela's lawsuits to federal court. In particular, they argue that the very substantial amount of damages sought by Bolivia and Venezuela establishes that they have brought these lawsuits in pursuit of their own "vital economic interests." The removing defendants also contend that in contrast to Venezuela's limited involvement in *Pacheco de Perez*, the foreign governments in these cases are "named parties" and have made their actions regarding the regulation of tobacco a "focus" of the litigation. For some reason, they discount the fact that these named parties do not seek a federal forum.

The application of the federal common law of foreign relations proposed by the defendants in these cases stretches the doctrine too far. There are no even arguably federal claims set forth in the complaint. Every claim in each case is either a state statutory or a state common law claim. When asked at oral argument exactly what federal question gave this Court the necessary jurisdictional hook, counsel for defendants tellingly responded: "The federal question is that the dispute presented by the complaint is governed by federal common law. That is the federal question." Sept. 1, 1999 Transcript at 96. But, of course, that is not the question in this case. The question is whether the tobacco industry or the named defendants engaged in negligence, fraud, misrepresentation, concealment, or deceit. That question is not governed by a federal common law at all, but by state common law.

Nothing about the allegations in these lawsuits implicates interests that are "uniquely federal." Bolivia and Venezuela are not asking the United States courts to uphold their sovereign acts or interests as Cuba did in *Sabbatino,* or as the new government of the Philippines did in *Mar-*

*cos.* Bolivia and Venezuela chose to bring these lawsuits under state law in state courts, seeking to be treated like any other private plaintiff that might have been wronged by the tobacco industry. To the extent that the federal common law of foreign relations is premised on the notion that the federal courts must protect foreign sovereigns from diverse decisions by state courts, such protection ought not to be provided when it is not sought—and in fact is resisted—by foreign sovereigns, as is the case here. In the absence of diversity, it would be an unwarranted usurpation of the states' interests to carve out federal jurisdiction whenever a foreign sovereign seeks a large recovery through the state court system. Indeed, to the extent that the tortious conduct alleged occurred in Texas and Florida, those states possess their own strong domestic interests in adjudicating this lawsuit.

The removing defendants nevertheless contend that these cases must be adjudicated in federal court in order for the United States—or at least its judicial branch—to speak with "one voice" to all foreign governmental plaintiffs. *See, e.g., Banco Nacional de Cuba v. Sabbatino,* 376 U.S. at 425, 84 S.Ct. 923 ("rules of international law should not be left to divergent and perhaps parochial state interpretations"). In particular, the removing defendants hypothesize that a favorable decision for Bolivia in a Texas state court that is contrary to an unfavorable decision for Venezuela in a Florida state court may appear inequitable to Venezuela and adversely affect our foreign relations with that country. If the removing defendant's hypothetical came to pass, however, Venezuela would be under no illusion that the United States government chose to treat it inequitably. Instead, as a sophisticated participant in our judicial system—who itself chose to litigate in state court, and persists in its desire to do so—Venezuela should understand that the differing outcomes of the cases are a result of the fora in which the different foreign sovereign

plaintiffs chose to bring their cases. The "one voice" argument also has its own limitations because there is no guarantee that the assumption of federal jurisdiction would result in a single position of the United States. There are hundreds of federal judges who could preside over similar cases and reach different conclusions, and there is no guarantee that a circuit split would be resolved by the Supreme Court.

Finally, to the extent that the United States government is concerned about potential adverse foreign relations consequences from the resolution of these lawsuits, the Executive Branch possesses the competence, capacity and incentive to make its view known either to this Court or the state courts in which the suits were brought. The Executive Branch is responsible for the conduct of foreign affairs and may address any potential foreign relations issues that may arise in these cases. By contrast, the federal courts have little context or expertise by which to analyze and address the potential implications of a lawsuit on foreign relations.[2] Thus far, neither the State Department nor the Justice Department has expressed any interest in these cases, and the foreign sovereigns whose interests arguably may be offended by an adverse judicial decision have made their own choices to proceed in state court. This Court will leave it to the Executive Branch, acting through the President and the Secretary of State—whose voice, in this area, is the Nation's—to evaluate whether it should inject itself into the disputes between Bolivia and Venezuela and the U.S. tobacco industry. *Cf. Barclays*

*Bank PLC v. Franchise Tax Board of California,* 512 U.S. 298, 328, 331, 114 S.Ct. 2268, 129 L.Ed.2d 244 (1994) (it falls to "Congress—whose voice, in this area [state taxation of multinational corporations], is the Nation's—to evaluate whether the national interest is best served by tax uniformity, or state autonomy"). The complaints of Bolivia and Venezuela do not present a federal question on their face, and federal question jurisdiction is not proper under the federal common law of foreign relations.[3]

### B. Diversity

In the notices of removal, the removing defendants asserted that the Court has diversity jurisdiction over these cases because they are "between . . . a foreign state . . . as plaintiff and citizens of a State or different States." 28 U.S.C. § 1332(a)(4). "Section 1332 has been interpreted to require 'complete diversity' "—all plaintiffs must be diverse from all defendants. *Ruhrgas A.G. v. Marathon Oil Co.,* 526 U.S. 574, 580 n. 2, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Bolivia and Venezuela argue that there is no diversity jurisdiction in their cases because the presence of foreign parties on both sides of the lawsuits destroys complete diversity.

In particular, Bolivia contends that diversity is lacking in its lawsuit because defendant BATUS Holdings is a citizen of Great Britain. Although BATUS Holdings has a principal place of business in Great Britain, it is undisputed that it is incorpo-

---

2. *Courts should remember that the doctrine of the federal common law of foreign relations has its own vices. It requires judges to determine on a case-by-case basis both* when *the foreign relations interests of the United States require a foreign relations law and* what *that law should be. The former question is generally a matter best left to the Executive Branch or to Congress, and the latter question—what is federal law—most often is left to Congress to determine.* See *Jack L. Goldsmith,* Federal Courts, Foreign Affairs, and Federalism, *83* VA.L.REV. *1617, 1667 (1997).*

3. *Both courts that have faced this specific issue in the past held that lawsuits brought by foreign sovereigns against the tobacco industry under the same legal theories as here did not implicate the federal common law of foreign relations.* See State of Sao Paulo of the Federative Republic of Brazil v. American Tobacco Co., Inc., *Civil Action No. 2:00–0922, slip op. (E.D.La. May 26, 2000);* State of Rio De Janeiro v. Philip Morris Companies, Inc., *Civil Action No. 99–0196, slip op. (E.D.Tex. Sept. 14, 1999);* Republic of Panama v. American Tobacco Co., *1999 WL 350030 (E.D.La. May 28, 1999).*

rated in Delaware and also has a principal place of business in Louisville, Kentucky. For purposes of diversity, a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The definition of the word "State" includes "the Territories, the District of Columbia, and the Commonwealth of Puerto Rico," but does not include any foreign nations. 28 U.S.C. § 1332(d). Because the contacts that a corporation has with foreign countries are excluded from this definition of citizenship, such foreign contacts are irrelevant for determining the citizenship of a United States corporation. BATUS Holdings thus is a citizen of Delaware and of Kentucky for purposes of diversity analysis and its presence in this lawsuit does not deprive the Court of diversity jurisdiction. *See Torres v. Southern Peru Copper Corp.*, 113 F.3d at 543–44 ("Absent congressional amendment to section 1332(c)(1) to the contrary, we must conclude that for diversity purposes a corporation incorporated in the United States with its principal place of business abroad is solely a citizen of its 'State' of incorporation"); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1559 (11th Cir.1989) ("[A] corporation's principal place of business outside the United States, the District of Columbia and Puerto Rico will not defeat diversity of citizenship when an alien is part of the opposing side").

■ In Venezuela's lawsuit, by contrast, diversity is lacking because Venezuela sued B.A.T. Industries, PLC and British American Tobacco Co., Ltd. ("BATCo"), neither of which is a United States citizen because neither is incorporated in or does business in any state of the United States. *See* 28 U.S.C. § 1332(c)(1). The presence of B.A.T. Industries, PLC and BATCo as defendants therefore destroys complete diversity because foreign entities are parties on both sides of the lawsuit. The removing defendants nevertheless argue in their notice of removal that the Court should disregard B.A.T. Industries, PLC and BATCo because they were fraudulently joined as defendants by Venezuela in order to destroy diversity. In particular, the removing defendants contend that Venezuela is not capable of asserting jurisdiction over those defendants and only joined them in the action to prevent the case from being removed to federal court.

■ "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the ... defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997). The burden of establishing fraudulent joinder is a "heavy one." *Pacheco de Perez v. AT & T*, 139 F.3d at 1380. "In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in plaintiff's favor." *Id.*

■ The removing defendants have no where alleged that any of the jurisdictional facts pled by Venezuela in its complaint were fraudulent and have cited no precedent establishing that Venezuela cannot assert a claim against B.A.T. Industries, PLC and BATCo in the Florida courts. In fact, Venezuela appears to have a colorable claim that the Florida courts have personal jurisdiction over B.A.T. Industries, PLC and BATCo, inasmuch as a number of other courts have asserted jurisdiction over the same defendants in tobacco litigation on the grounds that the defendants possessed minimum contacts with the jurisdiction through their own conduct or the conduct of their agents. *See, e.g., Falise v. American Tobacco Co.*, 1998 WL 372401 (E.D.N.Y. July 2, 1998); *Commonwealth of Massachusetts v. Philip Morris, Inc.*, Civ. No. 95–7378–J, slip op. (Mass.Super.Mar. 20, 1998); *State of Washington v. American Tobacco Co.*, No. 96–2–15056–8 SEA,

slip op. (Wash.Super.Ct. King Co. June 9, 1998). Furthermore, courts also have upheld claims that are similar to those outlined in Venezuela's complaint. *See, e.g., Texas v. American Tobacco Co.*, 14 F.Supp.2d 956 (E.D.Tex.1997) (state could assert common law act to vindicate quasi-sovereign rights); *Illinois v. Philip Morris, Inc.*, No. 96–L–13146, slip op. (Cir.Ct. Cook Co. Nov. 13, 1997) (state could assert antitrust, negligence and civil conspiracy claims).

Because the removing defendants have not established that Venezuela fraudulently pled any jurisdictional facts, and because it is possible that Venezuela "can establish a cause of action" against B.A.T. Industries, PLC and BATCo, this Court cannot conclude that the foreign defendants were fraudulently joined. With these foreign entities in the case as defendants, diversity is lacking. *See* 28 U.S.C. § 1332(a)(3).[4] As no other basis for federal jurisdiction exists for this lawsuit other than diversity, the Court will remand Venezuela's case to the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida.

### C. Lack of Unanimity

■■■ Because the Court has concluded that it has diversity jurisdiction over Bolivia's lawsuit on the basis of the undisputed facts regarding the defendants' place of incorporation and principal place of business, the Court must reach the issue of whether removal to the federal courts is precluded because of the lack of unanimous consent to removal among the defendants. No party disputes the fact that a notice of removal normally must reflect the consent of all of those defendants who have been served. *See* 28 U.S.C. § 1441(a); *see also Williams v. Howard University*, 984 F.Supp. 27, 29 (D.D.C. 1997). The removing defendants argue, however, that the Court should disregard the Liggett defendants' failure to consent to removal because the Liggett defendants allegedly have engaged in a pattern of cooperating with plaintiffs in smoking and health cases against the tobacco industry.[5] In particular, the removing defendants have provided a wealth of documentation which they maintain establishes that the Liggett defendants are following a declared policy of cooperating with all plaintiffs that sue the tobacco industry. Bolivia argues that the entirety of the removing defendants' submissions are irrelevant because there is no evidence that the Liggett defendants are cooperating with Bolivia in this particular case.

The Court concludes that the removing defendants have provided sufficient circumstantial evidence of the Liggett defendants' general policy of cooperation with plaintiffs to allow discovery regarding their alleged cooperation in this case. For example, it seems anomalous that the Liggett defendants argue that they are not adverse to the other tobacco companies in this matter at the same time that they argue that they should not be held liable in the tobacco lawsuit brought by the United

4. Venezuela also argues that removal was improper even if the Court finds complete diversity because the defendant Brooke Group has its principal place of business in Florida. Under 28 U.S.C. § 1441(b), a case may not be removed on the basis of diversity jurisdiction if one of the defendants is a resident of the forum state. As the Court concludes that complete diversity is lacking in any event, it will not reach this issue.

5. In their notice of removal, the removing defendants argued at various points that the Liggett defendants should be "disregarded," "ignored" or "realigned" as plaintiffs. *See*

Bolivia Defendants' Notice of Removal at 13. At oral argument, counsel for the removing defendants argued that the Liggett defendants should not be truly "realigned" as plaintiffs—an action that would destroy diversity—but rather should simply be disregarded. *See* Sept. 1, 1999 Transcript at 61. Since the Court will grant the removing defendants' motion for limited discovery and invite supplemental briefing after the close of discovery, the parties also should address the extent to which the removing defendants are bound by the arguments presented in their notice of removal.

States because they are "polarized" and "no longer aligned" with those same tobacco companies. *See* Memorandum of Defendant, Liggett Group, Inc., in Support of Motion to Dismiss the Complaint, *United States v. Philip Morris, Inc.*, Civil Action No. 99-2496 (GK) at 8, 12; *see also id.* at 14 (quoting testimony of Bennett S. Le-Bow, Chief Executive Officer of Liggett Group, Inc., to White House Task Force) ("Liggett is and has been the whistle blower"). Indeed, as recently as ten days ago in oral argument before Judge Kessler, counsel for Liggett argued: "With respect to the relationship between Liggett and the other defendants, I think it is also well-known that Liggett is considered to be a pariah among the other defendants, and that the likelihood of Liggett participating in a racketeering conspiracy with the other joint defendants in this stage, and participating in strategy meetings or what have you is about as likely as Fidel Castro being invited to Miami to become an honorary citizen." *See United States v. Philip Morris, Inc.*, Civil Action No. 99–2496(GK), June 2, 2000 Transcript at 71–72.

Bolivia also should not object to the grant of discovery in view of its agreement to such discovery at oral argument in this case. *See* Sept. 1, 1999 Transcript at 76 ("[The removing defendants] earlier made a motion to take depositions of counsel. Your Honor denied that. We have no objection to that, Your Honor"). The Court therefore will grant the removing defendants' motion for leave to take limited discovery. Discovery will be limited to (1) any discussions between Bolivia or its agents and the Liggett defendants or their agents about the notice of removal or general cooperation in this lawsuit, and (2) any documentation that demonstrates cooperation in this lawsuit. The parties may submit supplemental briefs on the issue of unanimity when discovery has been concluded.

An Order consistent with this Opinion is entered this same day.

SO ORDERED.

## ORDER

Upon consideration of the motions of the Republic of Bolivia and the Republic of Venezuela to remand their lawsuits to the state courts in which they were originally brought, the motion of the removing defendants for leave to take limited discovery, the oppositions and replies thereto, and the arguments of counsel at the September 1, 1999 motions hearing, it is hereby

ORDERED that the motion of the Republic of Venezuela to remand its lawsuit to state court is GRANTED; it is

FURTHER ORDERED that Civil Action No. 99–1534 is REMANDED to the Circuit Court for the Eleventh Judicial District in and for Miami–Dade County, Florida; it is

FURTHER ORDERED that the Clerk of the Court shall remove Civil Action No. 99–1534 from the docket of the Court and transfer all files in that action to the Circuit Court for the Eleventh Judicial District in and for Miami–Dade County, Florida; it is

FURTHER ORDERED that the removing defendants' motion for leave to take limited discovery is GRANTED in part in Civil Action No. 99–0586. The removing defendants may take limited discovery from the Republic of Bolivia regarding (1) any discussions between Bolivia or its agents and the Liggett defendants or their agents about the notice of removal or general cooperation in this lawsuit, and (2) any documentation that demonstrates cooperation in this lawsuit. Discovery shall be completed by August 15, 2000; and it is

FURTHER ORDERED that the parties may submit supplemental briefs regarding Bolivia's motion to remand on or before September 11, 2000.

SO ORDERED.