United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 16, 2001 Decided April 26, 2002 

 No. 00-7213

 Republic of Venezuela, 
 Appellee

 v.

 Philip Morris Incorporated, et al., 
 Appellants

 Consolidated with 
 00-7214, 00-7215, 00-7216, 00-7257, 00-7258

 Appeals from the United States District Court 
 for the District of Columbia 
 (No. 99ms00213)

 Herbert M. Wachtell argued the cause for appellants Philip 
Morris Companies, Inc., et al. With him on the briefs were 
Timothy M. Broas, Robert F. McDermott, Jr., Paul S. Ryer-

son, Daniel F. Kolb, Kenneth N. Bass, Gene E. Voigts, 
Richard L. Gray, Patrick S. Davies and Steven Klugman. 
David Gruenstein and Leigh A. Hyer entered appearances.

 Robin S. Conrad, Kenneth S. Geller and John J. Sullivan 
were on the brief of amicus curiae Chamber of Commerce of 
the United States of America in support of appellants.

 Joel S. Perwin argued the cause for appellees. With him 
on the brief were Jonathan S. Massey, George M. Fleming, 
Sylvia Davidow and Andres C. Pereira.

 Before: Ginsburg, Chief Judge, Henderson, Circuit Judge, 
and Williams, Senior Circuit Judge.

 Opinion for the Court filed by Chief Judge Ginsburg.

 Separate concurring opinion filed by Senior Circuit Judge 
Williams.

 Ginsburg, Chief Judge: The district court issued orders 
remanding to a Florida state court four lawsuits filed by 
foreign states against tobacco companies based in the United 
States. The companies ask that we reverse the orders of the 
district court and that we issue a writ of mandamus to 
prevent the court from ordering the remand of similar law-
suits still pending before it. We hold that we are without 
appellate jurisdiction to review the orders the district court 
already has issued and that we have no warrant to prohibit 
the district court from remanding to state court those cases 
upon which it has not yet acted.

 I. Background

 Various foreign countries or subdivisions thereof sued 15 
United States tobacco companies in a Florida court to recover 
damages under the laws of Florida. Specifically, the Repub-
lics of Venezuela and of Ecuador, the Brazilian States of Mato 
Grosso Do Sol, Goias, and Espirito Santo, and the Russian 
Federation filed nearly identical complaints in the Circuit 
Court for Florida's Eleventh Judicial District in Miami-Dade 
County. They advanced at least ten distinct theories of 
liability, such as fraud, negligence, and unjust enrichment, 

and sought compensation from the companies for the costs of 
treating persons suffering from diseases associated with to-
bacco use. Twenty-nine other foreign states or subdivisions 
have filed similar actions--not now before us--in state and 
federal courts around the United States. The tobacco compa-
nies removed the present cases from the Florida state court 
to the United States District Court for the Southern District 
of Florida. The Judicial Panel on Multidistrict Litigation 
then consolidated the cases brought by Venezuela and three 
other foreign states and transferred them to the United 
States District Court for the District of Columbia.

 Some months later the district court dismissed for failure 
to state a claim a substantially similar suit against the tobacco 
companies brought in that court by the Republic of Gua-
temala. See In re Tobacco (Guatemala), 83 F. Supp.2d 125, 
126 (1999), aff'd, Service Employees Int'l Union Health & 
Welfare Fund v. Philip Morris Inc., 249 F.3d 1068 (2001). 
The court ruled that Guatemala's claims were not viable 
because Guatemala could not establish that its alleged inju-
ries, that is, its expenditures for the care and treatment of its 
citizens, were proximately caused by any misconduct on the 
part of the tobacco companies. For the same reason the 
district court has since dismissed several cases that had 
originated in other federal courts and been transferred by the 
JPML to this district. The cases under review are unlike 
those the district court dismissed only in that they were filed 
originally in state courts and therefore reached the district 
court after the tobacco companies removed them to a federal 
court pursuant to 28 U.S.C. s 1441; they are substantively 
identical in all other respects.

 The district court ordered that Venezuela's suit be remand-
ed to the Circuit Court for Florida's Eleventh Judicial Dis-
trict on the ground that there is no federal jurisdiction over 
the case. The court held that Venezuela's complaint does 
"not present a federal question on [its] face, and federal 
question jurisdiction is not proper under the federal common 
law of foreign relations." In re Tobacco (Venezuela), 100 
F. Supp.2d 31, 38 (2000); see also id. at 35 ("The complaints 
... contain only state statutory and common law claims"). 

The court later ordered the cases filed by Ecuador, Espirito 
Santo, and Goias remanded to the same Florida state court 
"for the reasons stated" in Venezuela. Since this case was 
argued on appeal, the Florida court in turn has dismissed the 
suits of Venezuela and Espirito Santo, citing with approval 
the district court's opinion in Guatemala. See Venezuela v. 
Philip Morris Cos., No. 99-01943 (Nov. 20, 2001); Espirito 
Santo v. Brooke Group Ltd., Inc., No. 00-07472 (Nov. 20, 
2001). The suits filed by Ecuador and by Goias remain 
pending before the Florida court.

 On October 30, 2000--after the district court had dismissed 
Guatemala and ordered Venezuela remanded--the JPML 
transferred to that court the cases Russia and Mato Grosso 
had brought in Florida and the tobacco companies had re-
moved to the federal court there. The district court here has 
not yet acted upon those cases.

 To summarize, the six cases now on review were originally 
filed in the Florida Circuit Court, then removed to a federal 
court in Florida, and finally transferred to the district court 
here; the district court ordered four cases--Venezuela, Ecua-
dor, Espirito Santo, and Goias--remanded to the Florida 
Circuit Court for lack of federal subject matter jurisdiction 
and has pending before it the two--Russia and Mato Gros-
so--that reached the district court after it had ordered the 
other cases remanded. For the sake of simplicity, we will 
refer to the four remanded cases as the Latin America Cases.

 II. Analysis

 The tobacco companies appeal the remand orders in the 
Latin America Cases. They also ask the court to issue a writ 
of mandamus prohibiting the district court from ordering the 
remand of Russia and Mato Grosso to the state court where 
those cases originated. Apparently, the companies would 
rather have the district court dismiss all the cases on the 
merits, as it dismissed Guatemala, than remit the cases to 
any less certain fate in the courts of Florida.

A. Appeal of the Latin America Cases

 This court is without jurisdiction to consider the appeal of 
the Latin America Cases. The orders of the district court 
return those cases to the state court from which they were 
removed on the ground that the court did not have federal 
subject matter jurisdiction over them. When it appears that 
a district court lacks subject matter jurisdiction over a case 
that has been removed from a state court, the district court 
must remand the case, 28 U.S.C. s 1447(c), and the court's 
order remanding the case to the state court whence it came 
"is not reviewable on appeal or otherwise," id. s 1447(d). See 
also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 711-12 
(1996) ("remands based on grounds specified in s 1447(c) are 
immune from review under s 1447(d)").

 The tobacco companies claim that, notwithstanding the 
unambiguous bar of the statute, some courts have said the 
prohibition of s 1447(d) "is not as broad as it seems." Poore 
v. American-Amicable Life, 218 F.3d 1287, 1291 (11th Cir. 
2000). In each case they cite, however, the court was describ-
ing not the prohibition in s 1447(d) but the exception thereto 
allowing review of a remand order that is not predicated upon 
either a lack of subject matter jurisdiction or a defect in the 
removal process. See Poore, 218 F.3d at 1289; Liberty Mut. 
v. Ward Trucking, 48 F.3d 742, 745-46 (3d Cir. 1995). Be-
cause the district court remanded the Latin America Cases 
for want of federal subject matter jurisdiction, the exception 
does not apply here, and the cases cited by the companies are 
not on point.

 The tobacco companies argue also that their appeals raise 
the "substantial question whether Congress intended by 
s 1447(d) to make a district court the final arbiter of ... an 
important issue of constitutional dimension," namely, "wheth-
er, under our constitutional scheme, claims by foreign govern-
ments of this nature fall within the adjudicatory authority of 
the federal courts based upon federal common law." We are 
tempted to say, as Wolfgang Pauli once said of a colleague's 
idea, the contention is "not even wrong." James Gleick, 
Genius: The Life and Science of Richard Feynman 115 (1992). 

For starters, the appeal does not raise an issue of "constitu-
tional dimension." The district court decided a pleading 
point: whether a complaint alleging various torts under the 
law of Florida "raises issues of federal law." Chicago v. 
International Coll. of Surgeons, 522 U.S. 156, 163 (1997). 
There is no provision in the Constitution, and the companies 
do not cite to any, that suggests this mundane inquiry takes 
on a "constitutional dimension" when the plaintiff is a foreign 
sovereign.

 Furthermore, the companies err in suggesting there is an 
exception to the prohibition of appellate review in s 1447(d) 
when the remand order does raise a constitutional question. 
As long as the district court orders a case remanded for want 
of subject matter jurisdiction, the Congress has insulated the 
decision to remand from review "whether or not that order 
might be deemed erroneous by an appellate court." Therm-
tron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 351 (1976). 
The decision of the Third Circuit In re TMI Litig. Cases 
Cons. II, 940 F.2d 832 (1991), which the companies offer for 
the proposition that "in extraordinary circumstances 
[s 1447(d) does not prohibit] appellate consideration of cer-
tain categories of remand orders," is not to the contrary. 
TMI holds that "1447(d) was not intended to preclude appel-
late consideration of a section 1292(b) certified question con-
cerning the constitutionality of an Act of Congress"--in that 
case the very statute upon the basis of which the plaintiff had 
invoked federal jurisdiction. Id. at 836. The decision recog-
nizes that s 1447(d) precludes appellate review of an order 
remanding a case to a state court when, as here, the order is 
"based upon a finding that removal was not authorized by 
Congress." Id. at 845; accord Rio de Janeiro v. Philip 
Morris Inc., 239 F.3d 714, 716 n.6 (5th Cir. 2001).

 The plaintiffs argue that the court may not hear the 
appeals for the additional reason that the records of the cases 
have been transferred back to the state court. See Starnes v. 
McGuire, 512 F.2d 918, 935 (1974) (en banc), a habeas corpus 
case in which we said that "once a record is transferred to a 
permissible forum in another district, this court loses jurisdic-
tion over the matter." The companies respond that Starnes 

governs only those cases that have been transferred to anoth-
er federal court, see Kimbro v. Velton, 30 F.3d 1501, 1504 n.2 
(D.C. Cir. 1994), and that we should not extend its holding to 
cases that have been remanded to state court. Having 
already held that s 1447(d) precludes review, however, we 
need not resolve this side dispute in order to decide the 
present cases.

B. Mandamus in Russia and Mato Grosso

 The tobacco companies also petition this court for a writ of 
mandamus prohibiting the district court from issuing any 
orders remanding Russia and Mato Grosso to the Florida 
Circuit Court where they were filed. The companies contend 
the lawsuits arise under federal common law because they 
implicate the vital interests--economic and sovereign--of a 
foreign nation and, hence, the foreign relations of the United 
States. (We will assume without deciding that the companies 
are correct about the significance of these cases to American 
foreign policy.) The foreign states respond that "federal 
jurisdiction exists only when a federal question is presented 
on the face of the plaintiff's properly pleaded complaint," and 
that a federal court may not assert jurisdiction over a case 
that raises no question of federal law simply because the 
plaintiff is a foreign sovereign. We need not resolve this 
dispute unless we determine first that a writ of mandamus is 
at least potentially available in the circumstances of this case.

 As a threshold matter, we agree with the tobacco compa-
nies that s 1447(d) is not a jurisdictional bar to the relief they 
request. The statute "prohibits review of all remand orders 
issued pursuant to s 1447(c) whether erroneous or not and 
whether review is sought by appeal or by extraordinary writ," 
Thermtron Prods., 423 U.S. at 343, but the district court has 
not issued an order of remand in Russia or Mato Grosso. By 
its terms, therefore, s 1447(d) does not prevent the court 
from entertaining the present petitions. But see Black & 
Decker v. Brown, 817 F.2d 13, 14 (3d Cir. 1987). We will not 
infer a jurisdictional limitation upon "our normal and tradi-
tional function when no statute requires that we do so." Id. 
at 15 (Garth, J., dissenting).

 As we often have noted, "the writ of mandamus is an 
extraordinary remedy, to be reserved for extraordinary situa-
tions." National Ass'n of Crim. Def. Lawyers, Inc. v. United 
States DOJ, 182 F.3d 981, 986 (1999) (NACDL). We are 
particularly disinclined to issue the writ before the district 
court has acted, as the petitioners here request. See In re 
Bituminous Coal Operators' Ass'n, Inc., 949 F.2d 1165, 1167 
(D.C. Cir. 1991) ("indiscriminate use of the remedy [would] 
avoid the stricture of the final judgment rule"). In resolving 
such a preemptive petition, we consider instructive the follow-
ing factors:

 (1) whether the party seeking the writ has any other 
 adequate means, such as a direct appeal, to attain the 
 desired relief;
 
 (2) whether that party will be harmed in a way not 
 correctable on appeal;
 
 (3) whether the district court clearly erred or abused its 
 discretion;
 
 (4) whether the district court committed an oft-repeated 
 error; and
 
 (5) whether the decision of the district court raises im-
 portant and novel problems or issues of law.
 
See NACDL, 182 F.3d 986-87. As the tobacco companies 
correctly observe, a petitioner need not be favored by all five 
factors in order to demonstrate its entitlement to the writ of 
mandamus; indeed, "it is difficult to envision a case that 
involves both an oft-repeated error as well as an issue of law 
of first impression." Valley Broad. Co. v. United States Dist. 
Ct. for the Dist. of Nev., 798 F.2d 1289, 1292 n.3 (9th Cir. 
1986). Our cases also make clear, however, that two of the 
factors are actually prerequisites, for no writ of mandamus--
whether denominated "advisory," "supervisory," or other-
wise--will issue unless the petitioner shows (1, above) that it 
has no other adequate means of redress, see NACDL, 182 
F.3d at 987, and (3, above) that the writ is necessary to 
emend a clear error or abuse of discretion. See Byrd v. 
Reno, 180 F.3d 298, 303 (D.C. Cir. 1999).

 We doubt the tobacco companies satisfy the first condition. 
It is true, as the companies assert, that they could not seek 
review of an order remanding Russia or Mato Grosso to the 
state court in Florida, but that is not because some practical 
exigency prevents the companies from availing themselves of 
their remedy at law. Compare, e.g., In re Sealed Case, 141 
F.3d 337, 340 (D.C. Cir. 1998) (issuing writ to prevent trans-
fer of motion to quash third-party subpoena). On the con-
trary, the companies have no legal right to appellate review. 
Rather, the court of appeals is prohibited by statute from 
reviewing remand orders--by appeal or otherwise--of the 
sort the district court might issue in Russia and Mato 
Grosso. Although, as we have said, s 1447(d) does not 
deprive this court of jurisdiction to issue a writ of mandamus, 
the determination of the Congress that we should not review 
a remand order certainly militates against our opining in 
advance upon the propriety of a remand order the district 
court might otherwise issue. See Ex parte Pennsylvania, 137 
U.S. 451, 454 (1890) ("it is unquestionably a general rule that 
the abrogation of one remedy does not affect another. But in 
this case, we think, it was the intention of [C]ongress to make 
the judgment of the circuit court remanding a cause to the 
state court final and conclusive").

 In any event, the tobacco companies do not come close to 
demonstrating that it would be a clear error or an abuse of 
discretion for the district court to order the cases remanded. 
The companies identify no precedent of this court or of the 
Supreme Court even suggesting there is federal subject 
matter jurisdiction over a case merely because the plaintiff is 
a foreign government with a sovereign or an economic inter-
est in the outcome of the lawsuit. The other circuits to have 
considered the companies' theory--in cases where the foreign 
sovereigns were not the plaintiffs but had a material interest 
in the outcomes--are divided over the issue of federal juris-
diction. Compare Pacheco de Perez v. AT&T Co., 139 F.3d 
1368, 1377 (11th Cir. 1998) ("Where a state law action has as a 
substantial element an issue involving foreign relations or 
foreign policy matters, federal jurisdiction is present"), and 
Torres v. Southern Peru Copper Corp., 113 F.3d 540, 542-43 

(5th Cir. 1997) (same), with Patrickson v. Dole Food Co., 251 
F.3d 795, 803 (9th Cir. 2001) (rejecting reasoning of Pacheco 
and Torres and citing with approval decision of district court 
to remand in Venezuela). Considering that the Ninth Circuit 
has adopted as its own the district court's reason for remand-
ing in the Latin America Cases, we cannot agree with the 
companies that the district court is now poised to commit a 
clear error that would justify our issuing a writ of manda-
mus.* See Byrd v. Reno, 180 F.3d 298, 303 (D.C. Cir. 1999) 
(denying petition for writ of mandamus "because it [was] far 
from clear that the district court erred"); In re Thornburgh, 
869 F.2d 1503, 1507 (D.C. Cir. 1989) ("the petitioner must 
demonstrate that [its] right to relief is 'clear and indisputa-
ble' ") (quoting Kerr v. United States Dist. Ct. for the N. Dist. 
of Ca., 426 U.S. 394, 403 (1976)).

 In sum, the companies have failed to make out one if not 
both prerequisites for a writ of mandamus. Therefore, we 
deny the companies' petitions without considering the other 
factors mentioned in NACDL.

__________
 * The companies argue in a footnote that "even if the entire 
claims [sic] of these foreign governments are not deemed to be 
governed by federal common law ... the question of the availability 
of the parens patriae doctrine in these suits is in and of itself 
clearly a substantial question governed by federal law sufficient to 
confer federal-question jurisdiction." We respond in kind. Cf. 
Hutchins v. District of Columbia, 188 F.3d 531, 539 n.3 (D.C. Cir. 
1999) ("We need not consider cursory arguments made only in a 
footnote").

 "[T]he doctrine of parens patriae is merely a species of pruden-
tial standing," Service Employees, 249 F.3d at 1073; it is not a 
substantive element of the plaintiffs' state common law claims. 
Whether a litigant has standing to sue may present a threshold 
issue for a federal court, but our doctrines of prudential standing 
are of no moment in a state court, the jurisdiction of which is not 
similarly limited to what is granted by an act of the legislature. 
The companies may not bootstrap their way into a federal court 
with a claim that the plaintiffs' standing would be an issue had the 
plaintiffs originally filed their lawsuits in a federal court, and the 
district court therefore did not err in rejecting this argument.

 Finally, we decline, as we must, the companies' invitation to 
issue an advisory opinion to the effect that the district court 
should not remand Russia or Mato Grosso. See Br. of 
Appellants at 31 ("[I]t may be entirely possible for this Court 
to grant petitioners effective relief in this proceeding while 
stopping short of actually issuing a writ of mandamus at this 
time"). Article III does not authorize a federal court "to 
declare, for the government of future cases, principles or 
rules of law which cannot affect the result as to the thing in 
issue in the case before it." California v. San Pablo & T.R. 
Co., 149 U.S. 308, 314 (1893).

 III. Conclusion

 For the foregoing reasons, the appeals in the Latin Amer-
ica Cases are dismissed for want of appellate jurisdiction, and 
the petitions for a writ of mandamus in Russia and Mato 
Grosso are denied.

 So ordered.

 Williams, Senior Circuit Judge, concurring: Although I 
agree that the defendants' arguments do not prevail, they 
seem to me a good deal subtler than the majority opinion lets 
on.

 First, the argument for federal jurisdiction is not for all 
claims in which a plaintiff foreign government has "a sover-
eign or an economic interest in the outcome," Maj. Op. at 9, 
but for a considerably narrower set, ones "where the actions 
of a foreign government are a direct focus of the litigation." 
Defendants' Br. at 36, quoting Pacheco de Perez v. AT&T, 139 
F.3d 1368, 1377 (11th Cir. 1998). This is manifested here, 
defendants argue, by the plaintiff governments' claim that 
"their very policymaking--their core governmental decision-
making as such--was subverted by an American industry 
over a period of some 40 years." Appellants' Br. at 34. 
From this the defendants reason that adjudication of the 
claims will necessarily take the court deep into the evaluation 
of plaintiff states' governmental decisionmaking, thereby im-
plicating United States foreign relations and rendering the 
dispute "inappropriate for state law to control." Texas In-
dus. v. Radcliff Materials, Inc., 451 U.S. 630, 641 (1981).

 But it is not clear that these allegedly federal issues satisfy 
the well-pleaded complaint rule--i.e., the proposition that 
federal court jurisdiction under s 1331 exists only if the 
federal issue appears on the face of a properly pleaded 
complaint. See Caterpillar Inc. v. Williams, 482 U.S. 386, 
392 (1987); see also Louisville & Nashville R. Co. v. Mottley, 
211 U.S. 149, 152 (1908). Federal issues raised by way of 
defense do not qualify, see Franchise Tax Bd. of Cal. v. 
Construction Laborers Vacation Trust for Southern Cal., 463 
U.S. 1, 14 (1983); Metropolitan Life Ins. Co. v. Taylor, 481 
U.S. 58, 63 (1987); Gully v. First Nat. Bank in Meridian, 299 
U.S. 109, 112 (1936), yet that appears to be the character of 
the issues sketched out by defendants. The plaintiffs pre-
sumably will portray themselves as completely innocent gulls 
of the tobacco companies, akin for example to garden-variety 
medical insurers, and the companies will then respond with 
evidence impugning the supposed innocence.

 The defendants hint at an argument that the present case 
might fall under the rubric of "complete preemption," an 
exception to the well-pleaded complaint doctrine. See Rivet 
v. Regions Bank of Louisiana, 522 U.S. 470, 475-76 (1998). 
But they do not offer us an analytical basis for extending the 
complete preemption doctrine beyond the two statutes that 
the Supreme Court has held effected such a preemption: 
s 502(a) of the Employee Retirement Income Security Act 
and s 301 of the Labor Management Relations Act. See, 
e.g., Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 
64-67 (1987) (ERISA); Avco Corp. v. Aero Lodge Number 
735, International Ass'n of Machinists and Aerospace Work-
ers, 390 U.S. 557, 560-62 (1968) (LMRA); see also Anderson 
v. H&R Block, 2002 U.S. App. LEXIS 5978, at *5-*12 (11th 
Cir., Apr. 3, 2002) (discussing well-pleaded complaint and 
complete preemption doctrines).

 Second, defendants argue a still narrower position: that 
some of plaintiffs' common law claims, those brought by the 
foreign governments as parens patriae, even though they are 
purportedly only under state law, in fact depend on an 
anterior federal law issue, namely a finding of federal pruden-
tial standing. See Defendants' Br. at 38 & n.**. Although 
normally of course federal standing doctrines are no part of 
state common law actions, see Maj. Op. at 10 n.*, defendants 
point to our decision in Service Employees Int'l Union Health 
& Welfare Fund v. Philip Morris, Inc., 249 F.3d 1068 (D.C. 
Cir. 2001), in which we treated the parens patriae standing 
issue as an element of the plaintiffs' state common law claims, 
and, in reliance entirely on federal law concepts, found the 
absence of such standing fatal to the claims. See id. at 1073; 
see also id. at 1069 (noting complaints' inclusion of common 
law claims). But in that case the plaintiffs themselves explic-
itly invoked parens patriae standing as to all claims, see 
Appellants' Opening Br. at 37-38 and Reply Br. at 6-7, 
Service Employees (No. 00-7093), drawing no distinction be-
tween the statutory and common law claims. Thus, the court 
in Service Employees had no occasion to hold that state 
common law parens patriae claims by a foreign government 
inherently include a federal element.