182 F.3d 981 (D.C. Cir. 1999)
 National Association of Criminal Defense Lawyers, Inc.,G. Jack King and Dr. Frederic Whitehurst, Appellees
v.
United States Department of Justice, Appellant
 No. 98-5437
 United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
 Argued April 30, 1999
Decided July 16, 1999
 
 Appeal from the United States District Court for the District of Columbia(No. 97cv00372)
 Alfred Mollin, Senior Counsel, U.S. Department of Justice, argued the cause for appellant. With him on the briefs were Frank W. Hunger, Assistant Attorney General at the time the briefs were filed, William B. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, U.S. Attorney, and Leonard Schaitman, Attorney, U.S. Department of Justice.
 Daniel Mach argued the cause for appellees. With him on the brief were David W. DeBruin and Daniel S. Alcorn. David K. Colapin to and Stephen M. Kohn entered appearances.
 Before: Ginsburg, Sentelle, and Randolph, Circuit Judges.
 Opinion for the Court filed by Circuit Judge Ginsburg.
 Ginsburg, Circuit Judge:
 
 
 1
 The Department of Justice appeals the district court's interim award of attorney's fees to the plaintiff National Association of Criminal Defense Lawyers in this case filed under the Freedom of Information Act, 5 U.S.C. § 552. In the alternative, the Department petitions this court to issue a writ of mandamus reversing the award. We dismiss the appeal because we lack jurisdiction to review the interim award until the district court enters a final judgment; we deny the petition because the circumstances do not warrant relief by way of mandamus.
 
 I. Background
 
 2
 In 1995 the Department of Justice's Office of Inspector General opened an investigation into allegations of wrongdoing at the crime laboratory of the Federal Bureau of Investigation. In late January 1997 newspapers reported that the OIG had completed its investigation. See, e.g., FBI Warns of Possible Flaws in Lab Evidence, L.A. Times, Jan. 31, 1997, at A1; Report Finds F.B.I. Lab Slipping from Pinnacle of Crime Fighting, N.Y. Times, Jan. 29, 1997, at A1. In February the NACDL, invoking the FOIA, asked the Department for "access to or a copy of any and all drafts" of the OIG report on the crime lab. At that time the only document responsive to the NACDL's request was a working draft of the OIG report.
 
 
 3
 When the NACDL had not received a response within ten business days, it filed suit in the district court. See 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(C) (1997). The NACDL also moved for a preliminary injunction to expedite release of the OIG report on the ground that the one-year limitation period for filing petitions for habeas corpus, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §§ 101, 105, 110 Stat. 1214, 1220, was set to expire on April 24, 1997; it feared "that criminal defendants whose convictions might have turned on tainted FBI evidence would be precluded from collaterally attacking those convictions." Shortly after the NACDL filed this suit, it learned that the Department had rejected its request, invoking the exemption for "records or information compiled for law enforcement purposes ... to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A).
 
 
 4
 At a March 7 status hearing the NACDL informed the district court that it also sought disclosure of the final OIG report, when complete. The Department reiterated its opposition to releasing the draft report and refused to commit to releasing the final report to anyone other than the Attorney General and the Congress. One week later, however, the Department modified its position, advising the court it would release the final report to the public at roughly the same time that it released the report to the Attorney General and to the Congress. Upon the statute of limitations issue the Department took the position that prisoners "will have one year from [the] date [of public release] to file habeas petitions for relief." Based "in large part" upon these representations, the district court denied the NACDL's motion for a preliminary injunction. On April 15, 1997 the Department publicly released the OIG's final report on the FBI crime lab.
 
 
 5
 Shortly thereafter the NACDL filed additional FOIA requests with the OIG and with the Deputy Attorney General, seeking "access to or copies of any and all records relating to" the OIG's investigation into the FBI crime lab. When neither recipient had responded conclusively within ten business days, the NACDL amended its complaint to include those two requests. See 5 U.S.C. § 552(a)(6)(A)(i) (1997) (response must state whether agency will comply with request).
 
 
 6
 While litigation continued over the exemption from disclosure claimed by the Department for the draft report and portions of the OIG's working papers, the NACDL moved the court for an interim award of attorney's fees. In June 1998 the district court awarded the NACDL a bit more than $118,000 in fees. Although it recognized that this court had yet to rule upon the propriety of an interim award in a FOIA case, the district court concluded that the power to make such an award "lies in the sound discretion of the court."
 
 
 7
 Finding that the protracted litigation had imposed a financial hardship upon counsel for NACDL, the court held that an interim award of attorney's fees would be warranted if the NACDL could satisfy the criteria used to determine whether to award fees at the end of a FOIA case: "First, ... whether the party requesting fees is eligible for them. ... Second, ... whether [that] party is entitled to fees." Chesapeake Bay Found., Inc. v. Department of Agriculture, 11 F.3d 211, 216 (D.C. Cir. 1993). As to eligibility, the district court found that although the case was not over the NACDL had substantially prevailed upon two issues: its suit was a significant cause of the public release of the final report, and "it was only the urging of Plaintiffs and the Court that led the Government to expedite its processing" of the OIG's working papers.* As to entitlement, the court considered the factors set out in Chesapeake Bay--"(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information"--and concluded that the NACDL was entitled to an interim award of attorney's fees. 11 F.3d at 216.
 
 
 8
 The Department then moved to require the NACDL to post a bond sufficient to cover the amount of the award. The district court denied the motion, reasoning that a bond requirement would "make ... nonsense of the concept of an interim award," and ordered the Department to pay the fees "without further delay."
 
 
 9
 The Department filed a notice of appeal and moved the district court for a stay of its order pending appeal. After the district court denied the stay the Department filed a similar motion in this court. See Fed. R. App. P. 8. Based upon the NACDL's agreement not to seek enforcement of the district court's order prior to our disposition of the Department's motion for a stay, we deferred consideration of that motion pending resolution of the case. We now dismiss the motion as moot.
 
 II. Analysis
 
 10
 On appeal the Department objects only to the district court's discretionary decision to award interim attorney's fees; it challenges neither the court's legal authority to make such an award under the FOIA nor its refusal to require the NACDL to post a bond. The NACDL contends that this court lacks jurisdiction to review an interim award of fees because it is not a final judgment and does not fall within any exception to the final judgment rule. The Department acknowledges that the interim award is not a final judgment, but argues that we have jurisdiction to review the award under the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546-47 (1949). Alternatively, the Department argues that we should review the district court's decision by way of a writ of mandamus in the exercise of our "supervisory" power over the district court.See In re United States, 872 F.2d 472, 479 (D.C. Cir. 1989);see also 16 Charles Alan Wright et al., Federal Practice and Procedure § 3934.1 (2d ed. 1996).
 
 A. Collateral Order Doctrine
 
 11
 Under the final judgment rule of 28 U.S.C. § 1291, this court has jurisdiction only "of appeals from ... final decisions of the district courts of the United States." See also Linder v. Department of Defense, 133 F.3d 17, 23 (D.C. Cir. 1998) (rule "avoids the mischief of economic waste and of delayed justice that can accompany piecemeal litigation"). The Supreme Court, however, in Cohen recognized "a narrow class of collateral orders which do not meet th[e] definition of finality, but which are nevertheless immediately appealable under § 1291." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996). To be appealable under the collateral order doctrine, an "order must [1] conclusively determine [a] disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978). An appellant can satisfy the third requirement by showing that it will suffer irreparable harm if denied interlocutory review. Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 376 (1981).
 
 
 12
 We have addressed the application of the collateral order doctrine to an interim award of attorney's fees only once before. In Trout v. Garrett, 891 F.2d 332 (1989), a Title VII case, we held that such an award was not appealable because it did "not even dispositively determine fees due up to this stage of the litigation" and because "the government ... [had not] demonstrat[ed] a real prospect of irreparable harm." Id. at 335. Although the NACDL reads Trout as "clear, binding authority forbidding interlocutory appeals of interim fee awards," we do not. In Trout, we held only that upon the facts of that case the Government had satisfied neither the first nor the third requirement of Cohen. Indeed, the implication of Trout is that an interim award of attorney's fees that does satisfy all three of the Cohen criteria is immediately appealable. At least six circuits have so held. See Law v. NCAA, 134 F.3d 1025, 1027 (10th Cir. 1998); Rosenfeld v. United States, 859 F.2d 717, 721 (9th Cir. 1988); Dardar v. Lafourche Realty Co., 849 F.2d 955, 957 & n.8 (5th Cir. 1988);Webster v. Sowders, 846 F.2d 1032, 1035 (6th Cir. 1988);Palmer v. City of Chicago, 806 F.2d 1316, 1318-20 (7th Cir. 1986); Haitian Refugee Ctr. v. Meese, 791 F.2d 1489, 1493 (11th Cir. 1986).
 
 
 13
 As in Trout the present parties dispute whether the Department has satisfied the first and third of the Cohen tests. With respect to the first, we agree with the Department that the district court's order "conclusively determine[s] the disputed question." Coopers & Lybrand, 437 U.S. at 468. In Trout the district court had awarded only "the minimum irreducible amount[ ]" to which the plaintiffs were entitled for the issues upon which they had prevailed, leaving open the possibility of further awards for work that had already been done on those issues. 891 F.2d at 333 n.2. Here, in contrast, the award is, as the Department correctly states, "the last word on fees for purposes of the release of the Inspector General's Final Report and for any expedition achieved in the release of related documents." The NACDL does not disagree with respect to the draft and final versions of the OIG report, but points out that it is continuing in the district court to oppose the Department's claims that some of the OIG's working papers are exempt from disclosure under the FOIA. Even if the NACDL substantially prevails upon the latter issue, however, any future award of attorney's fees would not be for the work that caused the Department to expedite processing of the OIG's papers. Accordingly, we hold that the district court's order meets the first criterion of Cohen.
 
 
 14
 Turning to the third criterion, however, we do not believe the Department has demonstrated a "real prospect of irreparable harm." Trout, 891 F.2d at 335. The Department has made no showing that the NACDL will likely be unable to repay the fees if the award is later reduced or overturned. See Rosenfeld, 859 F.2d at 721-22 (party appealing interim award of attorney's fees bears burden of showing irreparable harm). The Department does point out that the NACDL, in arguing for an interim award of attorneys fees, stated before the district court not only that its counsel was experiencing financial hardship but also that it had "limited resources."Before this court, however, the NACDL has in no uncertain terms represented that it is able, and acknowledged that it would be obligated, "to repay the fees if they are ultimately reversed on appeal after final judgment." The Department contends that the two NACDL statements are contradictory. While we agree that a party may not "blow hot and cold and take now a position contrary to that taken in the proceedings
 
 
 15
 it invoked to obtain [relief]," Callanan Road Improvement Co. v. United States, 345 U.S. 507, 513 (1953), we see no such inconsistency in the NACDL's position viewed overall.
 
 
 16
 In the district court the NACDL opposed the Department's motion to require it to post a bond as follows:
 
 
 17
 NACDL believes that the likelihood of the government overturning the interim fee award on appeal is extremely remote, but whatever the outcome NACDL plans to be in existence for the indefinite future. Thus the purported harm claimed by the government--not having a party from which to seek reimbursement in the unlikely event it is needed--does not exist. The government's argument fails because it states that NACDL can collateralize a bond for more than the amount of the award but that NACDL is not substantial enough to seek reimbursement [from] in the very remote event of appeal. Pl.'sSuppl. Opp. to Def.'s Mot. to Amend Ct.'s Order (R.89),at 2.
 
 
 18
 While the Department characterizes this submission as "evasive[ ]" and designed to confirm the implication "that [the NACDL's] resources were insufficient to afford counsel," we understand it merely to point out an inconsistency in the Department's own argument.
 
 
 19
 Moreover, we agree with the NACDL that the financial hardship that may warrant an interim award of attorney's fees is not the same as the irreparable harm needed to justify interlocutory review. For an interim award of attorney's fees it is enough that the fee is high relative to the party's or its counsel's ability to continue financing the litigation. See Allen v. FBI, 716 F. Supp. 667, 670 (D.D.C. 1989). On the other hand, the irreparable harm necessary to bring a case within the "tight 'collateral order doctrine' of Cohen," Trout, 891 F.2d at 335, must entail some prospect that the party is or will become judgment proof. See Campanioni v. Barr, 962 F.2d 461, 463 (5th Cir. 1992). The NACDL's submissions to the district court are evidence only that paying its counsel would cause it financial hardship; they do not raise the prospect that, if called upon to do so, the NACDL would be unable to repay the Department.
 
 
 20
 In sum, because the interim award of attorney's fees is neither a final judgment under § 1291 nor a collateral order under Cohen, we do not have jurisdiction to review it.
 
 B. Mandamus
 
 21
 As we have often noted, the writ of mandamus is "an extraordinary remedy, to be reserved for extraordinary situations." In re Sealed Case, 151 F.3d 1059, 1063 (1998); accord In re Papandreou, 139 F.3d 247, 250 (1998) ("Lax rules on mandamus would undercut [the final judgment rule] ... and would lead to piecemeal appellate litigation"). Accordingly, we are not quick to issue a writ of mandamus in the exercise of our supervisory power over the district court. See In re Bituminous Coal Operators' Ass'n, Inc., 949 F.2d 1165, 1167 (1991) ("While recognizing that this litigation qualifies as 'really extraordinary,' we open no door for 'indiscriminate use' of the remedy to avoid the strictures of the final judgment rule"); United States v. Hubbard, 650 F.2d 293, 309 n.62 (1980) ("Although the Supreme Court ... and this court ... have expressed a willingness to employ the writ ... in a supervisory capacity to remedy certain classes of error not traditionally thought remediable by mandamus, this willingness cannot be read expansively").
 
 
 22
 We have yet systematically to set forth criteria by which to determine whether a "supervisory" writ of mandamus shall issue. See, e.g., Bituminous Coal, 949 F.2d at 1167-68; In re United States, 872 F.2d at 477-79; Potomac Elec. Power Co. v. ICC, 702 F.2d 1026, 1034-35 (D.C. Cir. 1983). Four of our sister circuits, however, have adopted guidelines that we find instructive and apply today. See Bauman v. United States Dist. Ct., 557 F.2d 650 (9th Cir. 1977); see also United States v. Amlani, 169 F.3d 1189, 1193-94 (9th Cir. 1999) (following Bauman); In re Perrigo Co., 128 F.3d 430, 435 (6th Cir. 1997) (same); United States v. McVeigh, 119 F.3d 806, 810 (10th Cir. 1997) (same); In re Kansas City Star Co., 73 F.3d 191, 194 (8th Cir. 1996) (same). They consider:
 
 
 23
 (1) whether the party seeking the writ has any other adequate means, such as a direct appeal, to attain the desired relief;
 
 
 24
 (2) whether that party will be harmed in a way not correctable on appeal;
 
 
 25
 (3) whether the district court clearly erred or abused its discretion;
 
 
 26
 (4) whether the district court's order is an oft-repeated error; and
 
 
 27
 (5) whether the district court's order raises important and novel problems or issues of law.See, e.g., Bauman, 557 F.2d at 654-55. Following these guidelines, we see that a supervisory writ of mandamus is unwarranted in this case.
 
 
 28
 We have already concluded, first, that the Department can seek review of the interim award of attorney's fees following entry of a final judgment in this case and, second, that it will not suffer irreparable injury in the meantime. We will assume the third consideration, clear error, for the sake of the present argument. As to the fifth and fourth considerations, respectively, the Department argues that, though the district court's erroneous rationale for the award of fees is novel, it could between now and our resolution of the appeal from the final judgment in this case become "a 'persistent' error ... and thus threaten the proper administration of justice in this Circuit." Specifically, the Department claims that the district court, by determining that the NACDL substantially prevailed even though the Department released the final report to the public the day it was completed and was under no obligation to expedite the release of the OIG's working papers, ignored our teaching in Chesapeake Bay: if "the Government's position is legally correct.... no fees are recoverable," regardless whether "information was disclosed after initial resistance." 11 F.3d at 216.
 
 
 29
 We do not share the Department's concern that the decision of the district court will "invite[ ] abuse of the FOIA" with respect to interim awards of fees. As noted, the Department's claims of error are rooted in the particulars of this case; it does not challenge wholesale the district court's authority to issue an interim award of fees. Apart from the question of legal authority, the district court rendered only a fact-specific discretionary decision based upon credibility determinations and the narrow legal arguments the parties placed before it. The Department's claim that the district court set a precedent with portents well beyond the facts and arguments in this litigation lies somewhere between exaggeration and speculation.
 
 
 30
 At most, then, only the Department's argument that the district court's decision is clearly erroneous may survive scrutiny, and upon that issue we express no opinion. In no event, however, could clear error alone support the issuance of a writ of mandamus in this case because, as we have seen, any error--even a clear one--could be corrected on appeal without irreparable harm either to the Department or to the administration of the FOIA in this circuit. In these circumstances the court will not issue a writ of mandamus.
 
 III. Conclusion
 
 31
 For the reasons stated above, the appeal is dismissed for lack of jurisdiction and the petition for mandamus is denied.
 
 
 32
 So ordered.
 
 
 
 Notes:
 
 
 *
 Initially the Department informed the NACDL and the district court that it could take up to four and one-half years to produce the working papers. In the event, however, the Government produced nearly all the documents that it deemed non-exempt within seven months.