**REPUBLIC OF VENEZUELA,**
Appellee,

v.

**PHILIP MORRIS INCORPORATED,**
**et al., Appellants.**

**Nos. 00–7213 through 00–7216,**
**00–7257, 00–7258.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 16, 2001.

Decided April 26, 2002.

Herbert M. Wachtell argued the cause for appellants Philip Morris Companies, Inc., et al. With him on the briefs were Timothy M. Broas, Robert F. McDermott, Jr., Paul S. Ryerson, Daniel F. Kolb, Kenneth N. Bass, Gene E. Voigts, Richard L. Gray, Patrick S. Davies and Steven Klugman. David Gruenstein and Leigh A. Hyer entered appearances.

Robin S. Conrad, Kenneth S. Geller and John J. Sullivan were on the brief of amicus curiae Chamber of Commerce of the United States of America in support of appellants.

Joel S. Perwin argued the cause for appellees. With him on the brief were Jonathan S. Massey, George M. Fleming, Sylvia Davidow and Andres C. Pereira.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Chief Judge GINSBURG.

Separate concurring opinion filed by Senior Circuit Judge STEPHEN F. WILLIAMS.

GINSBURG, Chief Judge:

The district court issued orders remanding to a Florida state court four lawsuits filed by foreign states against tobacco companies based in the United States. The companies ask that we reverse the orders of the district court and that we issue a writ of mandamus to prevent the court from ordering the remand of similar lawsuits still pending before it. We hold that we are without appellate jurisdiction to review the orders the district court already has issued and that we have no warrant to prohibit the district court from remanding to state court those cases upon which it has not yet acted.

## I. Background

Various foreign countries or subdivisions thereof sued 15 United States tobacco companies in a Florida court to recover damages under the laws of Florida. Spe-

cifically, the Republics of Venezuela and of Ecuador, the Brazilian States of Mato Grosso Do Sol, Goias, and Espirito Santo, and the Russian Federation filed nearly identical complaints in the Circuit Court for Florida's Eleventh Judicial District in Miami–Dade County. They advanced at least ten distinct theories of liability, such as fraud, negligence, and unjust enrichment, and sought compensation from the companies for the costs of treating persons suffering from diseases associated with tobacco use. Twenty-nine other foreign states or subdivisions have filed similar actions—not now before us—in state and federal courts around the United States. The tobacco companies removed the present cases from the Florida state court to the United States District Court for the Southern District of Florida. The Judicial Panel on Multidistrict Litigation then consolidated the cases brought by Venezuela and three other foreign states and transferred them to the United States District Court for the District of Columbia.

Some months later the district court dismissed for failure to state a claim a substantially similar suit against the tobacco companies brought in that court by the Republic of Guatemala. *See In re Tobacco (Guatemala)*, 83 F.Supp.2d 125, 126 (1999), *aff'd, Service Employees Int'l Union Health & Welfare Fund v. Philip Morris Inc.*, 249 F.3d 1068 (2001). The court ruled that Guatemala's claims were not viable because Guatemala could not establish that its alleged injuries, that is, its expenditures for the care and treatment of its citizens, were proximately caused by any misconduct on the part of the tobacco companies. For the same reason the district court has since dismissed several cases that had originated in other federal courts and been transferred by the JPML to this district. The cases under review are unlike those the district court dismissed only in that they were filed origi-

nally in state courts and therefore reached the district court after the tobacco companies removed them to a federal court pursuant to 28 U.S.C. § 1441; they are substantively identical in all other respects.

The district court ordered that Venezuela's suit be remanded to the Circuit Court for Florida's Eleventh Judicial District on the ground that there is no federal jurisdiction over the case. The court held that Venezuela's complaint does "not present a federal question on [its] face, and federal question jurisdiction is not proper under the federal common law of foreign relations." *In re Tobacco (Venezuela)*, 100 F.Supp.2d 31, 38 (2000); *see also id.* at 35 ("The complaints ... contain only state statutory and common law claims"). The court later ordered the cases filed by Ecuador, Espirito Santo, and Goias remanded to the same Florida state court "for the reasons stated" in *Venezuela*. Since this case was argued on appeal, the Florida court in turn has dismissed the suits of Venezuela and Espirito Santo, citing with approval the district court's opinion in *Guatemala*. *See Venezuela v. Philip Morris Cos.*, No. 99–01943 (Nov. 20, 2001); *Espirito Santo v. Brooke Group Ltd., Inc.*, No. 00–07472 (Nov. 20, 2001). The suits filed by Ecuador and by Goias remain pending before the Florida court.

On October 30, 2000—after the district court had dismissed *Guatemala* and ordered *Venezuela* remanded—the JPML transferred to that court the cases Russia and Mato Grosso had brought in Florida and the tobacco companies had removed to the federal court there. The district court here has not yet acted upon those cases.

To summarize, the six cases now on review were originally filed in the Florida Circuit Court, then removed to a federal court in Florida, and finally transferred to the district court here; the district court

ordered four cases—*Venezuela, Ecuador, Espirito Santo,* and *Goias*—remanded to the Florida Circuit Court for lack of federal subject matter jurisdiction and has pending before it the two—*Russia* and *Mato Grosso*—that reached the district court after it had ordered the other cases remanded. For the sake of simplicity, we will refer to the four remanded cases as the *Latin America Cases.*

## II. Analysis

The tobacco companies appeal the remand orders in the *Latin America Cases.* They also ask the court to issue a writ of mandamus prohibiting the district court from ordering the remand of *Russia* and *Mato Grosso* to the state court where those cases originated. Apparently, the companies would rather have the district court dismiss all the cases on the merits, as it dismissed *Guatemala,* than remit the cases to any less certain fate in the courts of Florida.

## A. Appeal of the *Latin America Cases*

■■■ This court is without jurisdiction to consider the appeal of the *Latin America Cases.* The orders of the district court return those cases to the state court from which they were removed on the ground that the court did not have federal subject matter jurisdiction over them. When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case, 28 U.S.C. § 1447(c), and the court's order remanding the case to the state court whence it came "is not reviewable on appeal or otherwise," *id.* § 1447(d). *See also Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 711–12, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ("remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)").

The tobacco companies claim that, notwithstanding the unambiguous bar of the statute, some courts have said the prohibition of § 1447(d) "is not as broad as it seems." *Poore v. American–Amicable Life,* 218 F.3d 1287, 1291 (11th Cir.2000). In each case they cite, however, the court was describing not the prohibition in § 1447(d) but the exception thereto allowing review of a remand order that is not predicated upon either a lack of subject matter jurisdiction or a defect in the removal process. *See Poore,* 218 F.3d at 1289; *Liberty Mut. v. Ward Trucking,* 48 F.3d 742, 745–46 (3d Cir.1995). Because the district court remanded the *Latin America Cases* for want of federal subject matter jurisdiction, the exception does not apply here, and the cases cited by the companies are not on point.

The tobacco companies argue also that their appeals raise the "substantial question whether Congress intended by § 1447(d) to make a district court the final arbiter of ... an important issue of constitutional dimension," namely, "whether, under our constitutional scheme, claims by foreign governments of this nature fall within the adjudicatory authority of the federal courts based upon federal common law." We are tempted to say, as Wolfgang Pauli once said of a colleague's idea, the contention is "not even wrong." James Gleick, Genius: The Life and Science of Richard Feynman 115 (1992). For starters, the appeal does not raise an issue of "constitutional dimension." The district court decided a pleading point: whether a complaint alleging various torts under the law of Florida "raises issues of federal law." *Chicago v. International Coll. of Surgeons,* 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). There is no provision in the Constitution, and the companies do not cite to any, that suggests this mundane inquiry takes on a "constitutional di-

mension" when the plaintiff is a foreign sovereign.

Furthermore, the companies err in suggesting there is an exception to the prohibition of appellate review in § 1447(d) when the remand order does raise a constitutional question. As long as the district court orders a case remanded for want of subject matter jurisdiction, the Congress has insulated the decision to remand from review "whether or not that order might be deemed erroneous by an appellate court." *Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 351, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976). The decision of the Third Circuit *In re TMI Litig. Cases Cons.II,* 940 F.2d 832 (1991), which the companies offer for the proposition that "in extraordinary circumstances [§ 1447(d) does not prohibit] appellate consideration of certain categories of remand orders," is not to the contrary. *TMI* holds that "1447(d) was not intended to preclude appellate consideration of a section 1292(b) certified question concerning the constitutionality of an Act of Congress"—in that case the very statute upon the basis of which the plaintiff had invoked federal jurisdiction. *Id.* at 836. The decision recognizes that § 1447(d) precludes appellate review of an order remanding a case to a state court when, as here, the order is "based upon a finding that removal was not authorized by Congress." *Id.* at 845; *accord Rio de Janeiro v. Philip Morris Inc.,* 239 F.3d 714, 716 n. 6 (5th Cir.2001).

The plaintiffs argue that the court may not hear the appeals for the additional reason that the records of the cases have been transferred back to the state court. See *Starnes v. McGuire,* 512 F.2d 918, 935 (1974) (en banc), a habeas corpus case in which we said that "once a record is transferred to a permissible forum in another district, this court loses jurisdiction over the matter." The companies respond that *Starnes* governs only those cases that have been transferred to another federal court, *see Kimbro v. Velten,* 30 F.3d 1501, 1504 n. 2 (D.C.Cir.1994), and that we should not extend its holding to cases that have been remanded to state court. Having already held that § 1447(d) precludes review, however, we need not resolve this side dispute in order to decide the present cases.

B. Mandamus in *Russia* and *Mato Grosso*

The tobacco companies also petition this court for a writ of mandamus prohibiting the district court from issuing any orders remanding *Russia* and *Mato Grosso* to the Florida Circuit Court where they were filed. The companies contend the lawsuits arise under federal common law because they implicate the vital interests—economic and sovereign—of a foreign nation and, hence, the foreign relations of the United States. (We will assume without deciding that the companies are correct about the significance of these cases to American foreign policy.) The foreign states respond that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint," and that a federal court may not assert jurisdiction over a case that raises no question of federal law simply because the plaintiff is a foreign sovereign. We need not resolve this dispute unless we determine first that a writ of mandamus is at least potentially available in the circumstances of this case.

 As a threshold matter, we agree with the tobacco companies that § 1447(d) is not a jurisdictional bar to the relief they request. The statute "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not and whether review is sought by appeal or by extraordinary writ," *Thermtron Prods.,* 423 U.S. at 343, 96 S.Ct. at 589, but the

district court has not issued an order of remand in *Russia* or *Mato Grosso*. By its terms, therefore, § 1447(d) does not prevent the court from entertaining the present petitions. *But see Black & Decker v. Brown*, 817 F.2d 13, 14 (3d Cir.1987). We will not infer a jurisdictional limitation upon "our normal and traditional function when no statute requires that we do so." *Id.* at 15 (Garth, J., dissenting).

 As we often have noted, "the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations." *National Ass'n of Crim. Def. Lawyers, Inc. v. United States DOJ*, 182 F.3d 981, 986 (1999) (*NACDL*). We are particularly disinclined to issue the writ before the district court has acted, as the petitioners here request. *See In re Bituminous Coal Operators' Ass'n, Inc.*, 949 F.2d 1165, 1167 (D.C.Cir.1991) ("indiscriminate use of the remedy [would] avoid the stricture of the final judgment rule"). In resolving such a preemptive petition, we consider instructive the following factors:

(1) whether the party seeking the writ has any other adequate means, such as a direct appeal, to attain the desired relief;

(2) whether that party will be harmed in a way not correctable on appeal;

(3) whether the district court clearly erred or abused its discretion;

(4) whether the district court committed an oft-repeated error; and

(5) whether the decision of the district court raises important and novel problems or issues of law.

*See NACDL*, 182 F.3d at 986–87. As the tobacco companies correctly observe, a petitioner need not be favored by all five factors in order to demonstrate its entitlement to the writ of mandamus; indeed, "it is difficult to envision a case that involves both an oft-repeated error as well as an issue of law of first impression." *Valley Broad. Co. v. United States Dist. Ct. for the Dist. of Nev.*, 798 F.2d 1289, 1292 n. 3 (9th Cir.1986). Our cases also make clear, however, that two of the factors are actually prerequisites, for no writ of mandamus—whether denominated "advisory," "supervisory," or otherwise—will issue unless the petitioner shows (1, above) that it has no other adequate means of redress, *see NACDL*, 182 F.3d at 987, and (3, above) that the writ is necessary to emend a clear error or abuse of discretion. *See Byrd v. Reno*, 180 F.3d 298, 303 (D.C.Cir. 1999).

 We doubt the tobacco companies satisfy the first condition. It is true, as the companies assert, that they could not seek review of an order remanding *Russia* or *Mato Grosso* to the state court in Florida, but that is not because some practical exigency prevents the companies from availing themselves of their remedy at law. *Compare, e.g., In re Sealed Case*, 141 F.3d 337, 340 (D.C.Cir.1998) (issuing writ to prevent transfer of motion to quash third-party subpoena). On the contrary, the companies have no legal right to appellate review. Rather, the court of appeals is prohibited by statute from reviewing remand orders—by appeal or otherwise— of the sort the district court might issue in *Russia* and *Mato Grosso*. Although, as we have said, § 1447(d) does not deprive this court of jurisdiction to issue a writ of mandamus, the determination of the Congress that we should not review a remand order certainly militates against our opining in advance upon the propriety of a remand order the district court might otherwise issue. *See Ex parte Pennsylvania*, 137 U.S. 451, 454, 11 S.Ct. 141, 34 L.Ed. 738 (1890) ("it is unquestionably a general rule that the abrogation of one remedy does not affect another. But in this case, we think, it was the intention of [C]ongress to make the judgment of the circuit court

remanding a cause to the state court final and conclusive").

In any event, the tobacco companies do not come close to demonstrating that it would be a clear error or an abuse of discretion for the district court to order the cases remanded. The companies identify no precedent of this court or of the Supreme Court even suggesting there is federal subject matter jurisdiction over a case merely because the plaintiff is a foreign government with a sovereign or an economic interest in the outcome of the lawsuit. The other circuits to have considered the companies' theory—in cases where the foreign sovereigns were not the plaintiffs but had a material interest in the outcomes—are divided over the issue of federal jurisdiction. *Compare Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1377 (11th Cir.1998) ("Where a state law action has as a substantial element an issue involving foreign relations or foreign policy matters, federal jurisdiction is present"), *and Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 542–43 (5th Cir.1997) (same), *with Patrickson v. Dole Food Co.*, 251 F.3d 795, 803 (9th Cir.2001) (rejecting reasoning of *Pacheco* and *Torres* and citing with approval decision of district court to remand in *Venezuela*). Considering that the Ninth Circuit has adopted as its own the district court's reason for remanding in the *Latin America Cases*, we cannot agree

with the companies that the district court is now poised to commit a clear error that would justify our issuing a writ of mandamus.* *See Byrd v. Reno*, 180 F.3d 298, 303 (D.C.Cir.1999) (denying petition for writ of mandamus "because it [was] far from clear that the district court erred"); *In re Thornburgh*, 869 F.2d 1503, 1507 (D.C.Cir.1989) ("the petitioner must demonstrate that [its] right to relief is 'clear and indisputable'") (quoting *Kerr v. United States Dist. Ct. for the N. Dist. of Ca.*, 426 U.S. 394, 403, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976)).

In sum, the companies have failed to make out one if not both prerequisites for a writ of mandamus. Therefore, we deny the companies' petitions without considering the other factors mentioned in *NACDL*.

■ Finally, we decline, as we must, the companies' invitation to issue an advisory opinion to the effect that the district court should not remand *Russia* or *Mato Grosso*. *See* Br. of Appellants at 31 ("[I]t may be entirely possible for this Court to grant petitioners effective relief in this proceeding while stopping short of actually issuing a writ of mandamus at this time"). Article III does not authorize a federal court "to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the

---

* The companies argue in a footnote that "even if the entire claims [*sic*] of these foreign governments are not deemed to be governed by federal common law ... the question of the availability of the *parens patriae* doctrine in these suits is in and of itself clearly a substantial question governed by federal law sufficient to confer federal-question jurisdiction." We respond in kind. *Cf. Hutchins v. District of Columbia*, 188 F.3d 531, 539 n. 3 (D.C.Cir. 1999) ("We need not consider cursory arguments made only in a footnote").

"[T]he doctrine of *parens patriae* is merely a species of prudential standing," *Service Em-*

*ployees*, 249 F.3d at 1073; it is not a substantive element of the plaintiffs' state common law claims. Whether a litigant has standing to sue may present a threshold issue for a federal court, but our doctrines of prudential standing are of no moment in a state court, the jurisdiction of which is not similarly limited to what is granted by an act of the legislature. The companies may not bootstrap their way into a federal court with a claim that the plaintiffs' standing would be an issue had the plaintiffs originally filed their lawsuits in a federal court, and the district court therefore did not err in rejecting this argument.

thing in issue in the case before it." *California v. San Pablo & T.R. Co.*, 149 U.S. 308, 314, 13 S.Ct. 876, 37 L.Ed. 747 (1893).

### III. Conclusion

For the foregoing reasons, the appeals in the *Latin America Cases* are dismissed for want of appellate jurisdiction, and the petitions for a writ of mandamus in *Russia* and *Mato Grosso* are denied.

*So ordered.*

STEPHEN F. WILLIAMS, Senior Circuit Judge, concurring:

Although I agree that the defendants' arguments do not prevail, they seem to me a good deal subtler than the majority opinion lets on.

First, the argument for federal jurisdiction is *not* for all claims in which a plaintiff foreign government has "a sovereign or an economic interest in the outcome," Maj. Op. at 199, but for a considerably narrower set, ones "where the actions of a foreign government are a direct focus of the litigation." Defendants' Br. at 36, quoting *Pacheco de Perez v. AT&T*, 139 F.3d 1368, 1377 (11th Cir.1998). This is manifested here, defendants argue, by the plaintiff governments' claim that "their very policy-making—their core governmental decision-making as such—was subverted by an American industry over a period of some 40 years." Appellants' Br. at 34. From this the defendants reason that adjudication of the claims will necessarily take the court deep into the evaluation of plaintiff states' governmental decisionmaking, thereby implicating United States foreign relations and rendering the dispute "inappropriate for state law to control." *Texas Indus. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

But it is not clear that these allegedly federal issues satisfy the well-pleaded complaint rule—i.e., the proposition that federal court jurisdiction under § 1331 exists only if the federal issue appears on the face of a properly pleaded complaint. See *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); see also *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Federal issues raised by way of defense do not qualify, see *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 14, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936), yet that appears to be the character of the issues sketched out by defendants. The plaintiffs presumably will portray themselves as completely innocent gulls of the tobacco companies, akin for example to garden-variety medical insurers, and the companies will then respond with evidence impugning the supposed innocence.

The defendants hint at an argument that the present case might fall under the rubric of "complete preemption," an exception to the well-pleaded complaint doctrine. See *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475–76, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). But they do not offer us an analytical basis for extending the complete preemption doctrine beyond the two statutes that the Supreme Court has held effected such a preemption: § 502(a) of the Employee Retirement Income Security Act and § 301 of the Labor Management Relations Act. See, e.g., *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (ERISA); *Avco Corp. v. Aero Lodge Number 735, International Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560–62, 88 S.Ct. 1235, 20 L.Ed.2d 126

(1968) (LMRA); see also *Anderson v. H&R Block*, 287 F.3d 1038, 1040–44 (11th Cir.2002) (discussing well-pleaded complaint and complete preemption doctrines).

Second, defendants argue a still narrower position: that some of plaintiffs' common law claims, those brought by the foreign governments as parens patriae, even though they are purportedly only under state law, in fact depend on an anterior federal law issue, namely a finding of federal prudential standing. See Defendants' Br. at 38 & n.**. Although normally of course federal standing doctrines are no part of state common law actions, see Maj. Op. at 199 n.*, defendants point to our decision in *Service Employees Int'l Union Health & Welfare Fund v. Philip Morris, Inc.*, 249 F.3d 1068 (D.C.Cir.2001), in which we treated the parens patriae standing issue as an element of the plaintiffs' state common law claims, and, in reliance

entirely on federal law concepts, found the absence of such standing fatal to the claims. See *id.* at 1073; see also *id.* at 1069 (noting complaints' inclusion of common law claims). But in that case the plaintiffs themselves explicitly invoked parens patriae standing as to *all* claims, see Appellants' Opening Br. at 37–38 and Reply Br. at 6–7, *Service Employees* (No. 00–7093), drawing no distinction between the statutory and common law claims. Thus, the court in *Service Employees* had no occasion to hold that state common law parens patriae claims by a foreign government inherently include a federal element.