# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Argued October 13, 2006      Decided December 15, 2006

No. 05-5322

ROY BANKS,
APPELLEE

v.

OFFICE OF THE SENATE SERGEANT-AT-ARMS AND
DOORKEEPER OF THE UNITED STATES SENATE,
APPELLANT

————

Consolidated with
05-5323, 05-5324, 05-5335

————

Appeals from the United States District Court
for the District of Columbia
(No. 03cv00056)
(No. 03cv00686)
(No. 03cv02080)

————

On Petition for Writ of Mandamus

————

*Dawn R. Bennett-Ingold*, Senate Assistant Counsel for
Employment, Office of Senate Chief Counsel for

Employment, argued the cause for appellant. With her on the briefs were *Jean M. Manning*, Senate Chief Counsel for Employment, and *Matthew D. Keiser*, Senate Senior Counsel for Employment.

*William P. Farley* argued the cause for appellee. With him on the brief was *John F. Karl, Jr.*

Before: HENDERSON, RANDOLPH and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: This interlocutory appeal of a discovery sanction arises out of a suit brought by a former employee of the Office of the Senate Sergeant-at-Arms and Doorkeeper of the United States Senate ("SAA") alleging employment discrimination in violation of Title VII. During discovery, the SAA repeatedly failed to timely produce a privilege log in response to numerous appropriate requests from the plaintiff and without court permission. A magistrate judge ordered the SAA to pay plaintiff's attorney's fees incurred in his efforts to obtain the privilege log. The district court affirmed the sanction, and the SAA appeals asserting sovereign immunity from discovery sanctions. In the alternative, the SAA asks us to issue a writ of mandamus reversing the award. We dismiss the appeal because we lack jurisdiction under the collateral order doctrine to review a discovery sanction until the district court enters a final judgment. We deny the petition because the circumstances of this appeal are not extraordinary—alternative adequate relief is available to the SAA by way of appeal from a final judgment.

3

## I.

This case came before the district court under § 1408 of the Congressional Accountability Act of 1995, *as amended*, 2 U.S.C. §§ 1301-1438 ("CAA"). *See* 2 U.S.C. § 1408(a) (2000). The CAA applies select provisions of eleven federal employment laws to congressional offices, *see id.* § 1302(a), including the SAA. The plaintiff, Roy Banks, a former employee of the SAA covered by the CAA, *see id.* § 1301(3)(b) and (4), alleged employment discrimination that violated Title VII of the Civil Rights Act of 1964.

The issue before us arose out of a dispute over the delayed production of a privilege log. Between July 2003 and January 2004, Banks served three document requests on the SAA. *See Banks v. Office of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18 (D.D.C. 2005) ("May Opinion"). To each, the SAA refused to provide any documents, asserting that any responsive documents would be covered by the attorney-client privilege. *Id*. Rule 26(b)(5) of the Federal Rules of Civil Procedure requires that a party claiming privilege as a reason to withhold documents must produce a privilege log. "When a party withholds information otherwise discoverable under [the Federal Rules] by claiming that it is privileged . . . the party shall . . . describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." FED. R. CIV. P. 26(b)(5). The SAA failed to comply with this requirement. *See* May Opinion at 18. Rather than seek a protective order relieving it of this obligation or granting it more time to create one, the SAA merely promised by letters to Banks that a log was in preparation. *See id*. After several months of correspondence with the SAA, Banks turned to the court for help and filed a

motion to compel production of the log, which was produced shortly thereafter. *See Banks v. Office of Senate Sergeant-at-Arms*, 226 F.R.D. 113, 115 (D.D.C. 2005) ("February Opinion"). Banks then moved for sanctions against the SAA. *See id*. The magistrate judge found no reason in the record for the SAA's unapproved delay and ordered it to show cause why Banks should not be awarded attorney's fees and costs for having to file a motion to compel in the first instance. May Opinion at 21 (citing FED R. CIV. P. 37(a)(4)).

In response to the show cause order, the SAA argued that its obligation to file a privilege log did not arise until the court had first ruled on other objections to the production sought, *see* February Opinion at 113. The magistrate judge rejected this argument, describing it as a "*post hoc* rationalization" unsupported by law, *id*., and ordered the SAA to pay Banks' attorney's fees. *Id*. at 117. In his opinion, the magistrate judge observed that

> case law would have alerted any lawyer with a healthy respect for his own skin to either produce the privilege log with the [non-privileged] documents her [sic] client was producing, negotiate some other arrangement with opposing counsel, or seek judicial relief from the obligation to produce a privilege log until a date certain or until some other event . . . . What a lawyer cannot do is ignore the obligation to produce a privilege log when the opposing party has repeatedly demanded it for several months, and then, without judicial approval, further delay its production once opposing counsel formally demanded the privilege log by a letter. *Id*.

The SAA filed a motion for reconsideration of the magistrate judge's order with the district court, arguing that Congress enjoys sovereign immunity from Rule 37 sanctions, Defendant's Motion for Reconsideration at 2 (Mar. 3, 2005), thus leaving the federal courts without authority to award attorney's fees to litigants who suffer from the misconduct of congressional lawyers. The district court summarily denied the SAA's motion on July 4, 2005. Order Denying Motion for Reconsideration (July 4, 2005). The SAA makes the same argument on appeal.

**II.**

Before we can examine the issue raised by the SAA—whether the district court has authority to impose Rule 37 sanctions on an office of the legislative branch—we must first determine our own authority to consider this appeal, which is being made prior to the entry of a final judgment in the district court. "Jurisdiction is, of necessity, the first issue for an Article III court." *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1981). Both parties acknowledge that the contested interim award of attorney's fees is not a final judgment and that we have no jurisdiction to review the sanction unless it falls within the narrow confines of the collateral order doctrine, which, as we discuss below, allows us in some instances to conduct immediate review of interlocutory orders. Following clear and settled precedent, we conclude that the decision to award Banks' attorney's fees under Rule 37 is reviewable on appeal from final judgment and is therefore not within our jurisdiction for review at this stage of the litigation. We do not grant mandamus relief for the same reason: the appellant has an adequate remedy at law and may appeal the contested decision following a final

judgment. We find no threat to sovereign immunity sufficient to change this result.

Congress has limited our jurisdiction under 28 U.S.C. § 1291 to review of final district court decisions so that "[a]ppeal gives the upper court a power of review, not one of intervention," *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Among the values protected by this limitation is the preference for efficiency over the avoidance of temporary error. "In § 1291 Congress has expressed a preference that some erroneous trial court rulings go uncorrected until the appeal of a final judgment, rather than having litigation punctuated by piecemeal appellate review of trial court decisions which do not terminate the litigation," *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985) (internal quotation marks and citations omitted). The final judgment rule guards against the repeated interruption of district court proceedings and facilitates the orderly and effective conduct of a trial and the full development of a record for subsequent review. *Id*. It also relieves appellate courts from the immediate consideration of questions that might later be rendered moot, either because the party that lost the ruling prevails on the merits or because the issue fails to affect the final judgment in a manner warranting reversal. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987). The rule also preserves the role of the trial judge as initial adjudicator of legal and factual issues that arise during a case, and it limits parties' ability to "clog the courts through a succession of costly and time-consuming appeals," *Flanagan v. United States*, 465 U.S. 259, 264 (1984), which might drain their opponents' desire and capacity to pursue meritorious claims.

We have construed the final judgment rule strictly, repeatedly noting that a district court's decision is ordinarily

not final until it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Sealed Case* (*Medical Records*), 381 F.3d 1205, 1209 (D.C. Cir. 2004) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (internal quotation marks omitted)). The Rule 37 sanction imposed on the SAA neither ended the litigation nor left the court only to execute its judgment and would therefore not ordinarily be eligible for our review.

The final judgment rule is not, however, without nuance. It is qualified, for instance, by 28 U.S.C. § 1292(a), which provides the circuit courts with jurisdiction over appeals from, *inter alia*, "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions," 28 U.S.C. § 1292(a)(1); *see, e.g.*, *Cobell v. Kempthorne*, 455 F.3d 317, 321 (D.C. Cir. 2006). Section 1292(b) permits interlocutory review when a district judge certifies that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion," and further finds "that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b). Similarly, Rule 54(b) of the Federal Rules of Civil Procedure permits immediate appeal upon certification by a district judge of orders that are conclusive with respect to specific parties or claims in a litigation.

But even when interlocutory review is expressly granted by statute or rule, we construe such provisions narrowly, applying them only when a district court's challenged ruling might be of "serious, perhaps irreparable, consequence" to a litigant and therefore merit immediate review. *Cobell*, 455 F.3d at 321 (quoting *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 23-24 (D.C. Cir. 1986) (internal quotation marks omitted)). In

balancing the benefits of efficiency against the avoidance of error, the Supreme Court has favored the latter only where the effect of error may be serious and remain uncorrected by appeal from a final judgment entered long in the future. For example, the Supreme Court has permitted our immediate review of claims of double jeopardy, *see Abney v. United States*, 431 U.S. 651, 659 (1977), privilege asserted by members of Congress under the Speech and Debate Clause, *see Helstoski v. Meanor*, 442 U.S. 500, 506-07 (1979), and the classified immunities enjoyed by other individuals when they are protected not merely from liability but from suit, thus requiring vindication prior to the commencement of trial, *see Mitchell v. Forsyth*, 472 U.S. 511, 520 (1985) (absolute immunity for judges, prosecutors, witnesses (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983); *Butz v. Economou*, 438 U.S. 478, 508-17 (1978); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Imbler v. Pachtman*, 424 U.S. 409 (1976)); *Nixon v. Fitzgerald*, 457 U.S. 731, 755 (1982) (absolute presidential immunity).

The collateral order doctrine permits the immediate appeal of a small class of interlocutory decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen*, 337 U.S. at 546. Although not an exception to our preference for finality but a "practical construction" of the same principle, *Will v. Hallock*, 126 S. Ct. 952, 957 (2006) (internal citations and quotation marks omitted), the doctrine defines our scope of review to include a carefully considered set of circumstances for which Section 1291's jurisdictional requirement would, if mechanically applied, eliminate our opportunity to hear claims essential to litigants.

In determining which cases merit our immediate attention, the Supreme Court in *Cohen* set forth three bases for its decision to grant an immediate appeal despite the fact that the challenged order on appeal would not ordinarily have been considered to be a final judgment under §1291. 337 U.S. at 546-47. The Court later restated the *Cohen* requirements and refined them into a three-part test. For an order to merit collateral appeal, it "must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable after final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). The Court has repeatedly relied on this test, *see, e.g., Will*, 126 S.Ct. at 957 (noting that the enumerated conditions are "stringent," and that "[u]nless they are kept so, the underlying doctrine will overpower the substantial finality interests § 1291 is meant to further" (internal citations and quotation marks omitted)), and we rely on it here.

The SAA argues that each of the three requirements of the *Cohen* test has been satisfied. Appellant's Br. 2. Because the *Cohen* test is based on conjunction, such that each requirement must be satisfied for an interlocutory appeal to proceed, we need only determine that the SAA has failed to satisfy any one of the three requirements to conclude that we lack jurisdiction over this appeal. We focus our analysis on the third requirement of the *Cohen* test— unreviewability—and conclude that it is fatal to the SAA's argument.

The SAA argues that, absent our immediate intervention, its right to appeal the district court's sanction order on the grounds of sovereign immunity will be irrevocably lost. *See* Appellant's Br. 2. In support, it relies on

a line of decisions, including one from this Court, holding that appellate courts have jurisdiction over some interlocutory orders that are "far removed from the merits of the underlying case." *In re Rafferty*, 864 F.2d 151, 154 (D.C. Cir. 1988). The SAA maintains that its claim of sovereign immunity is "far removed" from the Title VII claims underlying the case before the district court. Only our interlocutory review, so the argument goes, can preserve the SAA's sovereign immunity.

This argument suffers from at least two flaws. First, and most fundamentally, the SAA has simply failed to demonstrate why it would be precluded from appealing the order following a final judgment from the district court. There is ample precedent in this Circuit for taking an appeal of a discovery order after entry of judgment. *See, e.g., Nat'l Ass'n of Criminal Def. Lawyers, Inc. v. U.S. Dep't of Justice*, 182 F.3d 981, 985 (D.C. Cir. 1999) (recognizing that a party can seek review of the interim award of attorney's fees following entry of a final judgment) ("NACDL"); *Bonds v. District of Columbia*, 93 F.3d 801, 807-08 (D.C. Cir. 1996) (reviewing discovery sanction imposed under Rule 37); *Trout v. Garrett*, 891 F.2d 332, 335 (D.C. Cir. 1989) (denying immediate review by appeal from interim attorney fee award in Title VII employment discrimination action). We cannot see how this order would escape our review absent our immediate intervention.

Second, the SAA has misread our opinion in *Rafferty*, where we found that it would be difficult in practical terms for an appellant to challenge on appeal a protective order that prohibited him from transferring information to third parties during the "potentially quite lengthy litigation" between the parties. *Rafferty*, 864 F.2d at 154. We determined that the magistrate judge's orders in *Rafferty* "had the effect of preventing petitioner from disclosing the information . . .

which petitioner had obtained before the litigation began . . . ." *Id.* at 155. We noted that it was "difficult to imagine" how Rafferty could raise the issue on appeal, not because of any legal preclusion, but because the information would no longer be under protective order after a final judgment, and the harm attached to Rafferty's inability to share information with the public would have been irrevocable. *Id.* at 154. Our concern in *Rafferty* was therefore based on our belief that practical exigency prevented the appellant from availing himself of his remedy at law, not that his remedy was precluded by law. *Id.*; *see also Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 198 (D.C. Cir. 2002) (comparing practical with legal bars to appellate review). To emphasize this point in our opinion, we likened the practical obstacles imposed by delayed review to those faced by a newspaper that seeks access to sealed documents in a judicial proceeding. *Rafferty*, 84 F.2d at 154. If the SAA's reading of our jurisprudence in *Rafferty* were correct, then no distinction could be made between the second and third requirements of the *Cohen* test: separability and unreviewability. If *Rafferty* were to permit our review over any order that is "far removed from the merits of the underlying case," *id.*, then the third requirement of the *Cohen* test (unreviewability) would be automatically satisfied when the second requirement (complete separability from the merits of the case) has been fulfilled.

Even if we were to concede, *arguendo*, the SAA's assertion that some degree of separability automatically satisfies *Cohen*'s requirement of unreviewability, the SAA has failed to demonstrate that the order at issue here is "far removed from the merits of the underlying case," *id.* at 154. Indeed, the Supreme Court's decision in *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198 (1999), suggests the opposite conclusion. In *Cunningham*, which involved a

similar appeal from a magistrate judge's Rule 37 sanctions order imposing costs and attorney's fees for discovery abuses, the Court opined that "[w]e do not think . . . that appellate review of a sanctions order can remain completely separate from the merits," 527 U.S. at 205. While we recognize that the sovereign immunity pressed by the SAA was not at issue, the Court in *Cunningham* nonetheless suggests that its reasoning be applied categorically. "Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." *Id*. at 206; *see also Digital Equip. Corp. v. Desktop Direct, Inc*., 511 U.S. 863, 876-77 (1994) (favoring generality in determining the availability of collateral order appeal); *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (same). The Court's suggestion—that discovery sanctions do not, as a group, constitute a category for immediate appeal under the collateral order doctrine—is consistent with its concern that sanction appeals "would undermine the very purposes of Rule 37(a), which was designed to protect courts and opposing parties from delaying or harassing tactics during the discovery process. Immediate appeals of such orders would undermine trial judges' discretion to structure a sanction in the most effective manner." *Cunningham*, 527 U.S. at 208-09.

Finally, we note that an appellant, failing to demonstrate that a lower court's order is unreviewable or effectively unreviewable, may still satisfy the third requirement of the *Cohen* test by demonstrating a likelihood of irreparable harm if interlocutory review is denied. *NACDL*, 182 F.3d at 984 (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 376 (1981)). A discovery sanction, however, will not ordinarily result in irreparable harm. *Id*. at 985 (interim award of attorney's fees did not satisfy the third

requirement of the *Cohen* doctrine because appellant had made no showing that appellee would likely be unable to repay the fees if the award were later reduced or overturned) (internal citation omitted); *see also Trout*, 891 F.2d at 335 (interim discovery sanction not immediately appealable because "the government . . . [had not] demonstrat[ed] a real prospect of irreparable harm"). We pause briefly to consider whether the SAA's sovereign immunity argument distinguishes its case from precedent. It does not.

The United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). In *Digital Equipment Corporation v. Desktop Direct, Inc.*, 511 U.S. 863 (1994), the Supreme Court affirmed the proposition enunciated in *Abney v. United States*, 431 U.S. 651 (1977), and *Mitchell v. Forsyth*, 472 U.S. 511 (1985), that "orders denying certain immunities are strong candidates for prompt appeal under § 1291." *Digital Equip.*, 511 U.S. at 871. Where the immunity guarantees a right not to stand trial, for instance, that right may be irretrievably lost if immediate review is not available. *In re Sealed Case, No. 99-309*, 192 F.3d 995, 999 (D.C. Cir. 1999) ("The right to be free from the burdens of trial is effectively unreviewable on appeal from a final judgment."); *see also Midland Asphalt Corp. v. United States*, 489 U.S. 794, 800-01 (1989) ("[D]eprivation of the right not to be tried satisfies the . . . requirement of being 'effectively unreviewable on appeal from a final judgment.'" (quoting *Coopers & Lybrand*, 437 U.S. at 468)).

Even the alleged denial of a right not to stand trial does not automatically merit immediate review. *See Digital Equip.*, 511 U.S. at 873. As the Supreme Court stated in *Will*

*v. Hallock*, "it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Will*, 126 S. Ct. at 959 (internal citation omitted). In *Will*, the Court held that there was no substantial public interest in the district court's refusal to apply the Federal Tort Claims Act's judgment bar. *See id.* at 960. Here, avoiding the temporary imposition of sanctions pending final review would likewise not serve a substantial public interest. *See id.* at 959 (explaining that qualified immunity claims can be reviewed under the collateral order doctrine because of "threatened disruption of governmental functions"); *see also United States v. Rose*, 28 F.3d 181, 186 (D.C. Cir. 1994) (stating that "separation of powers immunity should protect legislators from the burden of litigation and diversion from congressional duties"). Because an alleged right to avoid discovery sanctions is not forever extinguished once fees are paid, the SAA's sovereign immunity from discovery sanctions, if it exists at all, does not depend on our immediate review. The district court's decision that the SAA has no sovereign immunity from Rule 37 sanctions, though temporarily unfavorable to the SAA, is not permanently unreviewable and therefore causes no irreparable harm to the SAA, nor any threat to the public interest. If harm is done to the SAA's alleged interest by the district court's order, it may be remedied on appeal after final judgment. No rights at stake will be "irretrievably lost," *id.* at 871-72 (quoting *Richardson-Merrell*, 472 U.S. at 431).

We do not, therefore, distinguish the case before us from those in which we have previously found interim discovery sanctions ineligible for immediate appeal, such as *National Association of Criminal Defense Lawyers, Inc. v. U.S. Department of Justice*, 182 F.3d 981, 985 (D.C. Cir

1999) and *Trout v. Garrett*, 891 F.2d 332, 335 (D.C. Cir. 1989). We cannot see how the consequences of the SAA's temporary subjection to a district court's mistaken Rule 37 order could constitute the kind of "irreparable harm" contemplated under *Cohen* and its progeny. Like immunity from service of process (leading to lack of personal jurisdiction), immunity from Rule 37 sanction is better viewed as a right not to be subject to a binding judgment. Such a right may be vindicated effectively after trial. *See Van Cauwenberghe*, 486 U.S. at 524.

We now address whether we may exercise the mandamus authority, which the SAA suggests is available to us. And we begin, as we did in our approach to the collateral order doctrine, by recognizing the strict limitations of our mandamus jurisdiction.

In support of its argument, the SAA cites *Schlagenhauf v. Holder*, 379 U.S. 104, 109-10 (1964), in which the Supreme Court expressed a willingness to employ the writ of mandamus in an advisory capacity to answer important questions of first impression and in a supervisory capacity to remedy certain classes of error not traditionally thought subject to mandamus. We do not read this willingness expansively. *See NACDL*, 182 F.3d at 986 (citing, *inter alia*, *United States v. Hubbard*, 650 F.2d 293, 309 n.62 (D.C. Cir. 1980)). Mandamus is "a 'drastic' remedy, to be 'invoked only in extraordinary circumstances.'" *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). We note the threat that an imprudent use of mandamus poses to the principles underlying the final judgment rule discussed above. *See In re Papandreou*, 139 F.3d 247, 250 (D.C. Cir. 1998) ("Lax rules on mandamus would undercut [the final judgment rule] . . . and would lead to piecemeal appellate litigation."). Although

we have in rare circumstances been willing to employ the writ, we have only done so with great caution. *See Hubbard*, 650 F.2d at 309 n.62. So reluctant are we to consider mandamus relief that even where we have been presented "really extraordinary" cases, we are careful to caution against indiscriminate mandamus review. *See In re Bituminous Coal Operators' Ass'n, Inc.*, 949 F.2d 1165, 1167 (1991) ("While recognizing that this litigation qualifies as really extraordinary, we open no door for indiscriminate use of the remedy to avoid the strictures of the final judgment rule.") (internal quotation marks omitted).

We have made the writ available only when "(1) the plaintiff has a clear right to relief, (2) the defendant has a clear duty to act, and (3) there is no other adequate remedy available to plaintiff." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quotation marks and citations omitted). We have already concluded, first, that the SAA can seek review of the interim award of attorney's fees following entry of a final judgment in this case and, second, that it will not suffer irreparable injury in the meantime. The SAA has not claimed an entitlement to avoid the district court's jurisdiction altogether. It concedes that it is subject to suit and answerable to the final judgment of the court. Because appeal following final decision affords the SAA adequate remedy with respect to its challenges to the sanctions imposed upon it, we refuse to issue a writ of mandamus.

### III.

For the reasons stated above, the appeal is dismissed for lack of jurisdiction and the petition for mandamus is denied.

*So ordered.*